John J. HARVEY and Irma P. Harvey, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16798.

United States Court of Appeals Ninth Circuit.

Nov. 1, 1960.

---

1. See also Hurst v. United States, 10 Cir., 177 F.2d 894.

2. Way v. United States, 10 Cir., 276 F. 2d 912, 913.

A. Calder Mackay, Charles J. Higson, Los Angeles, Cal., for appellants.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Kenneth E. Levin, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before STEPHENS, BARNES and JERTBERG, Circuit Judges.

BARNES, Circuit Judge.

Petitioners brought this action in the Tax Court under § 272 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 272, to redetermine a deficiency assessed by the Commissioner with respect to petitioner's income tax for 1953. Petitioners are husband and wife, Irma P. Harvey being a party to this proceeding only by reason of having filed a joint return with her husband. Hereinafter John J. Harvey will be referred to as taxpayer. This court has jurisdiction on appeal. Internal Revenue Code of 1954, § 7482, 26 U.S. C.A. § 7482.

The sole question here involved is whether taxpayer in 1953 was employed away from his home post and hence entitled to deduct from his "income" certain expenses of travel, meals and lodging as provided by § 22(n) and § 23(a) (1) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 22(n), 23(a) (1) (A) or whether he was not. Section 22(n) of the Internal Revenue Code of 1939 defines adjusted gross income to mean gross income minus "deductions allowed by section 23 which consist of expenses of travel, meals, and lodging while away from home * * * in connection with the performance * * * of services as an employee." Section 23(a) (1) (A) provides for a deduction of all "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business * * *."

From 1940 to 1952 taxpayer was employed at Douglas Aircraft Company's plant in El Segundo, California. In 1952 he transferred to their plant at Santa Monica, California, to work in the testing division. A condition precedent to working in the testing division was an employee's willingness to travel outside the Los Angeles area. Within a short time after his transfer to the testing division, taxpayer was sent by Douglas to Edwards Air Force Base which is one hundred and seventeen miles from Santa Monica. He remained at Edwards from December 15, 1952, until about the end of January 1954. Taxpayer was classified by Douglas as on temporary assignment; was transferred on a travel order which expired after ninety days; and was paid a special allowance of seven dollars per diem. The ninety day limitation on taxpayer's travel order was imposed as a matter of company policy to further company control and, as well, to permit the employer to qualify under Armed Forces Procurement Regulations for reimbursement of certain costs. In fact, then, taxpayer's tour of duty at Edwards was not initially limited to ninety days; rather it appears that no representations were made to taxpayer regarding the length of his stay at Edwards. Taxpayer was told only that he would work at Edwards for as long as he was needed there.

Nevertheless, some information did then exist regarding the probable length of taxpayer's stay at Edwards. Work undertaken by Douglas in connection with government contracts was planned and an estimate of time required was made for each phase of the plan. It was not always possible to adhere to the estimates; unforeseen circumstances could require extensive revision; an accident or crash could terminate a project long before its scheduled completion date. The time estimates were classified, and taxpayer asserts that such estimates were not revealed to employees. The length of time actually required for flight testing has, in the Tax Court's words, ranged from "a few months" to "as long as one year, one and a half years or two years. There were instances when an employee

was sent from Santa Monica to Edwards Base that it was expected that the employee would be at Edwards longer than three months."

Taxpayer in fact was at Edwards for a little over a year. When he first arrived at Edwards, taxpayer was given a general assignment as a laboratory electrical technician. He had not been sent to Edwards with a test plane, but he was soon reassigned to work on the testing of the X-3 airplane. He had done no work on this aircraft at Santa Monica and his work at Edwards was not specifically related to the work he had done at Santa Monica or El Segundo.

Taxpayer, while at Edwards, resided at various times in a hotel; a room in a private residence, and with friends. He maintained his home in Santa Monica until October 1953. Then he moved his family to Lancaster, California, where he had built a home on land acquired several years previously. Lancaster is located thirty-one miles from Edwards, and one hundred and seventeen miles from Santa Monica. From that time until 1957, he rented the house which he owned in Santa Monica. In 1957, he sold the Santa Monica house.

The per diem allowance received by taxpayer during the taxable year 1953 amounted to $2,315.00. Taxpayer did not include this amount in his taxable income for the year 1953, but appended a note to his return indicating that he had received that amount. The Commissioner assessed a deficiency on the ground that the per diem was simply additional compensation, and that no deduction here was allowable for "away from home" expenses under sections 22(n) and 23(a)(1)(A) of the Internal Revenue Code of 1939. It was stipulated by the parties that taxpayer's actual expenses at Edwards during 1953 amounted to $2,315.00. The Tax Court upheld the Commissioner's determination and decided that there was a deficiency for the tax year 1953. Judge Forrester dissented.

Was taxpayer's Edwards Air Base assignment of such a nature as to entitle him to deduct travel expenses connected with it from his 1953 taxable income?

█ Both parties agree that the basic requirements for the deduction are set forth in Commissioner of Internal Revenue v. Flowers, 1946, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203. These requirements, both parties agree, are as follows:

1. The expenses must be reasonable and necessary traveling expenses; these include food and lodging.

2. The expenses must be incurred while "away from home."

3. There must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or his employer.

In this case it is conceded that requirements number 1 and number 3 are met, and that the only issue in controversy is whether the taxpayer was "away from home" during 1953.

Both parties further agree that taxpayer's home is not determined by the location of his residence, but by the location of his permanent post of duty. The question, then, finally resolves itself—was Edwards Air Force Base taxpayer's home post in 1953?

The Tax Court held "that petitioner's employment at Edwards Base was 'indefinite' in duration rather than 'temporary' since it could not be foreseen that termination would occur within a fixed or reasonably short period; that the Base was his headquarters and principal post of duty during the taxable year 1953" (John H. Harvey, 32 T.C. 1368, 1387). Accordingly, the court held that taxpayer was not "away from home" in 1953, and he did not, therefore, qualify for the travel expense deduction.

Taxpayer argues (a) that the ultimate finding that he was not a "temporary" employee is erroneous; (b) that the separate fact findings of the dissenter should be given great weight because the dissenter was the trial judge and actually heard the evidence; and (c) that the trial judge found, as facts, that Douglas in 1953 was located only temporarily at Ed-

wards and that the company was then actively seeking a more suitable site for flight testing. In consequence of this and other factors, including the great unforeseeability of developments in flight testing, the trial judge arrived at the ultimate factual conclusion that taxpayer's position at Edwards was "temporary."

Although it is true that the dissenting judge did ultimately characterize taxpayer's position as "temporary," he did not differ with the majority regarding the factual problem involved. The majority held taxpayer's employment to be indefinite, and therefore not temporary; the dissenter conceded that the length of taxpayer's "stay at Edwards was 'indefinite' * * * in the sense that its exact duration could not be predicted." He contended that taxpayer's employment at Edwards "was temporary when examined in the context of petitioner's relationship with Douglas."

The basic disagreement between the majority of the Tax Court and the dissenting judge is not one of fact, but whether the majority is right in holding that the place where a taxpayer is employed for an "indefinite" term is *always* his home post. If the majority is wrong; if the place where a taxpayer is "indefinitely" employed can, in some circumstances qualify as an employee's "away from home" post, then a test must be devised to determine when and under what circumstances such a result may be reached.

In asserting that the post of indefinite employment is always the "home post," the Commissioner relies primarily on Peurifoy v. Commissioner, 1958, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30. We do not read Peurifoy to establish the rule suggested by the Commissioner. In Peurifoy three construction workers with homes in Wilmington and Raleigh, North Carolina, took jobs at a construction project in Kinston, North Carolina, which was one hundred and two miles from Wilmington and seventy-eight miles from Raleigh. The Tax Court allowed the employees to take deductions for their living expenses

at Kinston, but the court of appeals overturned this decision. (Commissioner of Internal Revenue v. Peurifoy, 4 Cir., 1957, 254 F.2d 483.) The court of appeals pointed out that the expenses were not incurred because of " 'the exigencies' of the employer's business"; hence one of the fundamental requirements of the Flowers rule was not met. The Court then noted that there is an exception to the Flowers rule: the expenses, "though * * * not incurred for the benefit of the employer" will still qualify for the deduction if they are incurred in connection with a temporary employment away from taxpayer's well established tax home. Then follows the language so strongly relied upon by the Commissioner: "it is essential that the employment away from the established tax home shall be temporary in contemplation at the time of its acceptance and not indeterminate * * * as it develops." The Court then goes on to decide that taxpayers' employment was not temporary and hence they did not qualify for a deduction under the exception to the Flowers test.

What is important to the case at bar is the fact that the court in Peurifoy regarded the indeterminate nature of taxpayer's employment as bearing only on the question of whether taxpayer could qualify for the deduction despite the fact that he did not meet the Flowers requirement that the expense be incurred because of the exigencies of the employer's business.

This view of the case is strengthened by a reading of the short Supreme Court opinion, affirming the decision of the court of appeals. The Court notes the general rule of the Flowers case, allowing a taxpayer a deduction for travel expenses "when they are required by 'the exigencies of business.' " Then the Court says: "To this rule, however, the Tax Court has engrafted an *exception* which allows a deduction for expenditures of the type made in this case when the taxpayer's employment is 'temporary' as contrasted with 'indefinite' or 'indeterminate.' " Peurifoy v. Commissioner, su-

pra at page 60 of 358 U.S., at page 105 of 79 S.Ct.

Peurifoy, then, does not establish the rule, as suggested by the Commissioner, that the place where a taxpayer is employed for an "indefinite" period, is *necessarily* his tax home. The *per curiam* opinions, Claunch v. Commissioner, 5 Cir., 1959, 264 F.2d 309, and Ford v. Commissioner, 4 Cir., 1955, 227 F.2d 297, are similarly distinguishable.

To hold that the Commissioner has misapplied Peurifoy, however, does not resolve the problem. An important element of the Commissioner's case has been weakened, but the question remains: Did the court err in holding Edwards to be taxpayer's tax home in 1953? The Tax Court found Edwards to be taxpayer's 1953 tax home on the ground that his term of employment there was "indefinite." When the term "indefinite" is used as the Tax Court used it, the test applied by the Tax Court becomes a mechanical one, incapable of effectuating the purpose of the statute in question. It will be recalled that the Tax Court held taxpayer's employment to be indefinite because "it could not be foreseen that termination would occur within a fixed or reasonably short period." In the final analysis, thus, the Tax Court says that any place is a taxpayer's tax home; his principal post; unless his employment there will terminate within a fixed or short period of time.

We cannot agree that so mechanical a test furthers the purpose of the statute permitting an employee "away from home" to deduct his travel expenses. There is, as the Tax Court notes, little legislative history regarding the sections involved. The aim of the Congress was, apparently, "to equalize the burden between the taxpayer whose employment requires business travel and the taxpayer whose employment does not." The taxpayer who is away from home for short periods of time has the burden both of maintaining his home abode and of meeting the living expenses of his place of em-

ployment. It is not reasonable to expect the employee to dispose of his home every time the requirements of his employer's business necessitate his being away for an indefinite period of a few weeks or a few months; hence a special deduction is allowed to mitigate the burden which this taxpayer carries. The Tax Court's test does not further the legislative purpose of eliminating the double burden imposed upon such taxpayers. It is quite unreasonable to expect an employee on an assignment of indefinite duration to move his residence to his new station. Can, then, a test effectuating the legislative purpose be devised?

An employee might be said to change his tax home if there is a reasonable probability *known to him* that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. On the other hand, if it is very likely that taxpayer's stay away from home will be short; then it seems quite unreasonable to expect him to move his domicile, even though it cannot be said that his employment will terminate "within a fixed or reasonably short period," to use the words of the Tax Court.

The circumstances of the case at bar illustrate the application of the test here suggested. When taxpayer went to Edwards it could not be said that his employment there would end within a fixed period. His employment was "indefinite" in that sense, but it was also very likely— not certain, but quite probable—that his employment at Edwards would be relatively short. The findings of the Tax Court include the statement: "There were instances when an employee was sent from Santa Monica to Edwards Base that it was expected that the employee would be at Edwards longer than three months." This implies that normally em-

ployment at Edwards lasted only a few months. Certainly, under all the circumstances of this case it was not reasonable to expect taxpayer, when he was transferred to Edwards in December 1952, to move his domicile from Santa Monica to Lancaster. It is true that in October of 1953, in accordance with a plan formulated years previously and also because he had "been separated from [his] family long enough," taxpayer did move his family to Lancaster. But this fact does not alter taxpayer's reasonable expectations as they existed in December 1952. Accordingly, .we hold that under the facts of this case taxpayer was "away from home" in 1953, and is entitled to deduct his legitimate and reasonable travel expenses incurred during that year.

The fact that taxpayer moved his family to Lancaster in October 1953 does raise a secondary matter, for the Tax Court stated that "without any question, the part of the expenses * * * which applied to the period following the move of petitioner's family to Lancaster is not a business travel expense but is a non-deductible personal expense." This view is consistent with the suggested legislative purpose of the statutes involved here, but ignores the fundamental principle accepted by both parties that one's tax home is not his place of abode, but is his "home post," his principal place of employment. Furthermore, this statement is also inconsistent with the fact that the parties stipulated that petitioner's "away from home" expenses in 1953 were $2,315.00, if it is determined that petitioner was away from home while employed at Edwards.

We hold he was away from home during the entire year of 1953, and was entitled to deduct his admittedly reasonable travel expenses incurred while so away at his temporary home, even if that assignment is indefinite, so far as he can know and ascertain.

Reversed and remanded.