Thomas E. and Josephine H. Stephenson v. Commissioner.
Stephenson v. Commissioner
Docket No. 74620.
United States Tax Court
T.C. Memo 1961-27; 1961 Tax Ct. Memo LEXIS 323; 20 T.C.M. (CCH) 118; T.C.M. (RIA) 61027; January 31, 1961
*323 1. In May 1954 petitioner, a resident of Savannah, was sent by his regular employer as paymaster on a construction job at St. Marys, which was 166 miles from Savannah, Georgia. It was estimated that the original project would take 10 or 11 months to complete but, because of additional overlapping contracts obtained by his employer in the St. Marys area, petitioner remained in St. Marys until about June 1, 1956, at which time his employer's work was completed and petitioner returned to work in his employer's principal office in Savannah. Held, petitioner's expenditures for food and lodgings at St. Marys during this period were not deductible as travel expenses away from home. 2. About July 15, 1956, petitioner was sent back to St. Marys on a rush order accepted by his employer to do a specific job, and remained there until the job was completed in January 1957, at which time he returned to Savannah. Held, petitioner's expenditures for food and lodgings at St. Marys during this period were deductible as travel expenses away from home. 3. Held, petitioner entitled to deduct cost of daily trips to nearby town, required as part of his job, to get mail and payroll - amount determined. *324 Thomas E. Stephenson, pro se, 1319 E. Henry St., Savannah, Ga., Sanford P. Keziah, Esq., for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: Respondent determined deficiencies in petitioners' income tax for the years 1955 and 1956 in the amounts of $573.51 and $383.39, respectively. *325 The only issue is whether petitioners are entitled to deduct expenditures of Thomas E. Stephenson for food, lodgings, and automobile transportation as expenses for travel away from home under sections 62(2) and 162(a)(2), I.R.C. 1954. Respondent admits that the amounts claimed by petitioners on their returns for those purposes were spent for food and lodgings but does not concede that the amounts claimed for transportation were actually spent for that purpose. Findings of Fact Petitioners were married and maintained their personal residence in Savannah, Georgia, during the years 1955 and 1956 and prior thereto. They filed their joint Federal income tax returns for the years 1955 and 1956 with the district director of internal revenue, Atlanta, Georgia. In August 1953 Thomas E. Stephenson, hereinafter referred to as petitioner, was initially employed by Rollinson Engineering Company, of Savannah, as paymaster on a construction job being performed by Rollinson for Union Bag and Paper Corporation in Savannah. He worked at the job site rather than in Rollinson's principal offices, which were located about 6 miles from the job site. Petitioner lived with his *326 family in Savannah. He was considered a part of Rollinson's management force rather than labor force. At that time Rollinson was also engaged in construction work in Jesup, Georgia, and on other projects in and near Savannah. On April 29, 1953, Rollinson obtained a subcontract to do work in connection with the construction of a paper mill for St. Marys Kraft Corporation in St. Marys, Georgia, a town located 166 miles from Savannah. Work on this job was originally scheduled to start in January 1954 and to be completed in about 10 or 11 months. Due to material shortages Rollinson began work in St. Marys in January 1954 with only a small crew. Full-scale construction on the St. Marys project began in May 1954. In November 1953 petitioner was taken off the Union Bag project for work on the St. Marys project. However, until May 1954 he worked in the main offices of Rollinson in Savannah, primarily as paymaster on various "out-of-shop" jobs being performed in and near Savannah. He also became paymaster for the St. Marys project, beginning in January 1954, making weekly trips from Savannah to St. Marys to pay the small crew working there. When full-scale construction started in May 1954 *327 Rollinson wanted someone from its office at the job site in St. Marys and sent petitioner to St. Marys. St. Marys was a small town without direct train or bus service and without good restaurants or lodging accommodations, so at that time petitioner moved into a hotel in Kingsland, Georgia, which was about 11 miles from St. Marys, and lived there all the time he was working in St. Marys. Petitioner's wife, Josephine, and their children continued to live in Savannah, where Josephine was gainfully employed. Petitioner was paid an additional $20 per week all the time he was living in St. Marys to cover his additional living costs, and was also paid a travel allowance of $3 per day, all of which was included in his taxable income. In connection with the St. Marys project, Rollinson maintained a "field office" in St. Marys but received mail and banked in connection with this project in Kingsland. Petitioner was the "on-the-job" paymaster, billing clerk, buyer, etc., but the work was controlled from Rollinson's main office in Savannah. Petitioner was required to make one trip each day from St. Marys to Kingsland and back to pick up the mail, and was also required to make an additional *328 round trip on Friday of each week to get money for the payroll. Most of the time he used his own car for these trips but occasionally he used a company car. Petitioner usually drove to Savannah over the weekends and while there often stopped by the company offices to make reports and pick up supplies. On several occasions while petitioner was at St. Marys he made trips around the countryside in his own car looking for materials to be used on the job, for which Rollinson paid him an additional 8 cents per mile. When Rollinson obtained the St. Marys contract it had no other work in that area and no expectations of any additional work there. However, in November 1954 an additional contract was obtained by Rollinson to install a new machine in the St. Marys Kraft Corporation mill, which was estimated to take about 10 or 11 months to complete. Work on this contract was started in December 1954 and was completed in late 1955 or early 1956. Rollinson also obtained several small jobs in St. Marys in early 1956, which lasted until about the first of June 1956. Rollinson's work in St. Marys was completed at that time. Petitioner worked in St. Marys on these various jobs continuously from *329 May 1954 until June 1956 and lived in Kingsland all that time. He returned to Savannah about the first of June 1956 and worked for a period of 6 weeks as paymaster on "out-of-shop" jobs in Rollinson's main office in Savannah until mid-July. He was not paid the additional $20 per week nor the $3 per diem travel allowance during this period. About July 15, 1956, Rollinson received a rush order for a specific job in St. Marys and petitioner was sent back to St. Marys on this project and remained there until the job was completed in January 1957. He then returned to Savannah where he continued to work in Rollinson's main offices at his regular salary without allowances until about mid-1957 when he terminated his employment to take another job. Rollinson employed its paymasters for particular jobs as they were needed. At the time petitioner agreed to leave the Union Bag job to work on the St. Marys project he was a relatively new employee and thought it would enhance his opportunities with Rollinson if he agreed to go where it wanted him to go. During the year 1955 petitioner spent the sums of $936 for room rent and $1,170 for meals while living in Kingsland, Georgia; during 1956 he *330 expended $784 for room rent and $865.05 for meals while living in Kingsland. During the year 1955 petitioner spent the sum of $366.08 and during the year 1956 the sum of $215.40 for transportation in connection with services performed by him as an employee. During the entire year 1955 and from January 1 until June 1, 1956, petitioner's principal post of duty or home for tax purposes was in St. Marys, Georgia. During the remainder of the year 1956 petitioner's principal post of duty or home was in Savannah, Georgia. Of the sums expended by petitioner for meals and lodgings during 1956 one-half thereof was spent prior to June 1, 1956, and the remaining one-half thereafter. Opinion We are again faced with the ever troublesome problem of whether an employee's tax home travels with him when he is sent out of the town where he is living by his employer to work on a job that appears at the outset to be of limited, although somewhat indefinite, duration, and the employee leaves his family at what has been his home and incurs what would normally be considered personal living expenses to maintain himself at the job site. The problem is troublesome because it is difficult to strike a balance *331 between sections 62(2) and 162(a)(2) of the 1954 Code, [1] which allow deduction by an employee of travel expenses away from home and transportation expenses incurred in the performance of services as an employee, and section 262 [2] of that Code which does not allow deduction of personal, living, or family expenses. *332 While the Supreme Court does not appear to have specifically decided whether sections 62(2) and 162(a)(2) refer to a "tax home," as opposed to the normal concept of "home" (see dissenting opinion in Peurifoy v. Commissioner, 358 U.S. 59, 61), this Court has long recognized the distinction and has approached these problems on the theory that the statutes refer to "tax home" or taxpayer's principal post of duty. See James M. Eaves, 33 T.C. 938; John J. Harvey, 32 T.C. 1368, revd. 283 F. 2d 491 (C.A. 9, 1960); Mort L. Bixler, 5 B.T.A. 1181; and this view was also adopted by the Court of Appeals for the Fourth Circuit in Barnhill v. Commissioner, 148 F. 2d 913 (1945), affirming a Memorandum Opinion of this Court. In Commissioner v. Flowers, 326 U.S. 465, the Supreme Court did announce three conditions that must be satisfied before a travel expense deduction is allowable: 1. The expense must be a reasonable and necessary traveling expense, as that term is generally understood. 2. The expense must be incurred while away from home. 3. The expense must be incurred in pursuit of business, *333 meaning that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or his employer. The failure to satisfy any one of these conditions denies the deduction. Commissioner v. Flowers, supra. Whether a particular case meets these conditions is said to be a question of fact in most instances. Commissioner v. Flowers, supra.Nevertheless, this has not deterred appellate courts in reversing decisions of trial courts on this question. See Commissioner v. Peurifoy, 254 F. 2d 483 (C.A. 4, 1957), affd. 358 U.S. 59; Harvey v. Commissioner, 283 F. 2d 491 (C.A. 9, 1960). The case of James E. Peurifoy, 27 T.C. 149, involved itinerant workers who had no established principal place of employment, but rather who had a fixed residence from which they took construction jobs at various places near their places of residence, living at the job site during continuance of the job and returning to their residences after each job. This Court recognized that if a taxpayer chooses for reasons personal to himself to maintain his residence at a place other than his *334 place of employment, his personal living expenses at his place of employment are nondeductible, but that if taxpayer's employment away from his place of residence is so temporary that taxpayer could not reasonably have been expected to establish a residence at his place of employment, his living expenses at his place of employment are considered to be due to the exigencies of the trade or business, and are deductible. In deciding the question we recognized that no flat rule could be adopted and that the test was not so much whether by its very nature the employment was terminable and thus temporary, but rather whether the known facts or those which might develop during the course of the employment would indicate that the probable duration of the employment was sufficiently long to be considered indefinite or indeterminate rather than temporary. We allowed the deduction. On appeal the Court of Appeals for the Fourth Circuit (254 F. 2d 483), pointing out that normally the expense, to be deductible, must be required by the exigencies of the employer's business, not those of the calling of the employee, assumed the validity of the theory that where a taxpayer who has a well *335 established tax home accepts temporary employment of short duration away from his tax home he may deduct personal living expenses even though such expenses are not incurred for the benefit of the employer, but pointed out that to come within this exception "it is essential that the employment away from the established tax home be temporary in contemplation at the time of its acceptance and not indeterminate in fact as it develops." While recognizing that subjective consideration of the reasonableness of moving their residences to their posts of duty might have some bearing in determining whether the expenses were nondeductible under the provisions disallowing deduction of personal living expenses, the court held that such a test did not establish the deductibility of maintenance expenses as ordinary and necessary business expense within the meaning of section 23(a)(1)(A) of the 1939 Code if the employment was of substantial or indefinite duration. It concluded that the employment there involved was not temporary, and disallowed the deductions. Commissioner v. Peurifoy, supra.The Supreme Court apparently recognized the exception to the rule, but agreed with the Court *336 of Appeals that the employment was not temporary. Peurifoy v. Commissioner, 358 U.S. 59. Subsequent to the decision of the Court of Appeals in Peurifoy, this Court held in Kermit L. Claunch, 29 T.C. 1047, affd. 264 F. 2d 309 (C.A. 5, 1959), that a boilermaker who maintained his residence in Jasper, Alabama, and took jobs away from home from time to time, could not deduct his expenses for meals and lodgings while employed on a job in Rome, Georgia, which was expected to last for several years and did in fact last that long. This decision was based on the conclusion that the job at Rome, Georgia, because of its probable and actual duration was not "temporary." On appeal the Court of Appeals for the Fifth Circuit somewhat reluctantly accepted the interpretation of the law made by the Court of Appeals for the Fourth Circuit in Peurifoy and affirmed this Court. That case, like Peurifoy, involved itinerate workers with no permanent employer or employment. Compare United States v. LeBlanc, 278 F. 2d 571 (C.A. 5, 1960). The next cases of note to come before this Court were Darrell Spear Courtney, 32 T.C. 334, and John J. Harvey, supra, *337 which, like Flowers and the present case, and unlike Peurifoy and Claunch, involved individuals who were sent to a post of duty or the post of duty was established away from their places of residence by their more or less permanent employers. In those cases, because of the differences in type of employment, the question of whether the expenses were directly related to the carrying on of a trade or business were not involved. The only question was whether the taxpayers' tax homes were at their posts of duty. Nevertheless, we applied the test of "temporary employment" as opposed to "employment of substantial or indefinite duration" in determining where taxpayers' "tax homes" were. Finding, in Harvey, that taxpayer's employment at Edwards Air Force Base was "indefinite" in duration rather than "temporary" since it could not be foreseen that termination would occur within a fixed or reasonably short period, we held that the base was his principal post of duty and that his expenses were not incurred "while away from home" and were therefore not deductible. On appeal the Court of Appeals for the Ninth Circuit reversed this Court. Harvey v. Commissioner, supra. It concluded *338 that Peurifoy stands only for the proposition that even though the expenses are not incurred because of the exigencies of the employer's business (the third condition laid down in Flowers) they are nevertheless deductible if the taxpayer's employment is "temporary" as contrasted with "indefinite" or "indeterminate," and does not establish a rule that the place where a taxpayer is employed for an "indefinite" period is necessarily his tax home (referring to the second condition laid down in Flowers, that the expenditures be made "while away from home"). The appellate court rejected the test we had applied in determining taxpayer's tax home as being too mechanical and adopted a test of its own to determine where an employee's tax home is. That test, as we interpret it, is whether there was a reasonable probability known to the employee that his employment at his new station would continue for a long period of time. If so then the employee's tax home changes to his post of duty. If it is likely that employment away from home will be short, his tax home does not change even though it cannot be said that his employment will terminate "within a fixed or reasonably short period." What constitutes *339 a long or short period of time varies with the circumstances surrounding each case. In that case, looking at it from the time Harvey was first sent to Edwards, the appellate court found that it was not reasonable to expect him to move his family at that time and consequently found that his tax home had not moved to Edwards, even after Harvey had actually moved his family near there. As we analyze the cases it appears that the Courts of Appeals for the Fourth and Ninth Circuits used different approaches in determining whether employment was temporary. The Fourth Circuit, in Peurifoy, required "that the employment away from the established tax home be temporary in contemplation at the time of its acceptance and not indeterminate in fact as it develops." The Ninth Circuit, in Harvey, based its conclusion on the reasonable probability known to the employee that his new station would continue for a long or a short period of time even though it could not be said at the inception that the employment will terminate within a "fixed or reasonably short period." It may be that a different approach should be used in determining whether a taxpayer's employment is "temporary" for meeting one of *340 the conditions laid down by the Supreme Court in the Flowers case than is used in determining whether it meets the other, although we find it difficult to rationalize why when in both instances the basic question is whether the expenditure is an ordinary and necessary business expense or a personal living expense and the test in either case seems to be whether the employment is so temporary as to convert what would otherwise be a personal living expense into a deductible business expense. However, no contention was made in this case that the expenditures involved were not directly related to the employer's business, so we need decide only whether they were travel expenses incurred while away from petitioner's home, or were personal living expenses. Whichever approach we use in applying the facts in this case we come out with the same conclusions. When petitioner was originally sent to St. Mary's we do not think it could be foreseen that his employment there would terminate within such a fixed or reasonably short period of time to justify him in maintaining his home in Savannah and living in a hotel in Kingsland, if probable duration of the job alone was the criteria. Furthermore, *341 we believe there was a reasonable probability known to petitioner that his employment at St. Marys would last long enough to warrant moving his family, if time alone was involved. This would be particularly true by the end of 1954 when Rollinson apparently had not completed its first contract but had already entered into an additional contract. We believe that had petitioner not been close enough to Savannah to get home on weekends, and had his wife not been employed in Savannah, and had his employer not paid him additional wages to cover his additional costs, petitioner would have moved his family to Kingsland rather than incur the double burden of maintaining a home in Savannah and maintaining himself in a hotel in Kingsland for this period of time. Bearing in mind that petitioner must prove both that these expenditures were ordinary and necessary business expenses and that the expense of maintaining two homes was not simply a personal preference of petitioners, we have concluded that petitioner's expenditures for meals and lodgings during all of 1955 and up until the first of June 1956 were personal living expenses and not deductible. Cf. James M. Eaves, supra. *342 On the other hand, after all of Rollinson's work in St. Marys had been completed and petitioner had returned to Savannah, and was then sent back to St. Marys on a rush order to do a specific job, we believe termination of that job could be foreseen within a fixed or reasonably short time, and that there was little probability that it would last for a long period of time, so that that employment would be considered temporary. Such employment would not change petitioner's tax home from his place of residence in Savannah. Consequently, we have concluded that petitioner's expenditures for meals and lodgings in St. Marys or Kingsland from the time he returned there in July 1956 until the end of that year were travel expenses incurred away from home and are deductible. The transportation expenses claimed by petitioner were estimated and admittedly covered trips between St. Marys and Savannah on weekends as well as daily trips from St. Marys to Kingsland to get the mail and the payroll. There is very little evidence that petitioner's trips to Savannah on weekends had any connection with the performance by him of services as an employee. Petitioner's own testimony indicates the trips were *343 primarily for his own personal purposes. We conclude that expenditures for these trips are not deductible. On the other hand, it is uncontradicted that as a part of his job petitioner was required to make one round trip each working day and two on Fridays between St. Marys and Kingsland, a distance of 22 miles. His expenditures on these trips are deductible under section 62(2)(C) if the amount can be ascertained. At times petitioner used a company car and there is no way we can determine exactly how many trips he took in his own car. However, relying on Cohan v. Commissioner, 39 F. 2d 540, we have determined that petitioner traveled 4,576 miles [3] in his own car on these trips in 1955 which, at 8 cents per mile (the rate at which he was reimbursed by his employer on extra trips and which we considered a reasonable estimate of the cost per mile), involved an expenditure of $366.08, which he is entitled to deduct. On his tax return for 1956 petitioner only claimed $215.40 as travel expense and we think the evidence supports the deduction claimed. Decision will be entered under Rule 50. Footnotes
1. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * *
(2) Trade and business deductions of employees. - * * *
(B) Expenses for travel away from home. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. (C) Transportation expenses. - The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; * * * ↩
2. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses.↩
3. 208 round trips at 22 miles per trip.↩