Walter B. Mullens, Jr. and Geraldine J. Mullens v. Commissioner.
Mullens v. Commissioner
Docket Nos. 81941, 84775.
United States Tax Court
T.C. Memo 1963-7; 1963 Tax Ct. Memo LEXIS 336; 22 T.C.M. (CCH) 16; T.C.M. (RIA) 63007; January 10, 1963
Walter B. Mullens, Jr., pro se, 1734 Sweetbriar St., Palmdale, Calif. Edward M. Fox, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: This proceeding [1] involves deficiencies in income tax for 1953, 1954, 1955, 1956 and 1957 in the respective amounts of $488.20, $277.84, $491.14, $529.97 and $556.07. The principal issue for decision is whether certain allowances which petitioner Walter B. Mullens, Jr., received during each of the taxable years 1953 to 1957, inclusive, from his employer are deductible as travel expenses. The issue relating to a medical expense deduction for the years 1955, 1956 and 1957 will automatically be resolved *337 upon the basis of the foregoing issue. Findings of Fact The stipulated facts are so found and are incorporated herein by his reference. Petitioners are husband and wife residing at Palmdale, California. For the taxable years involved herein they filed joint income tax returns with the district director of internal revenue at Los Angeles, California. Douglas Aircraft Company (hereinafter referred to as Douglas) is a manufacturer of aircraft and other airborne articles. It produces aircraft and air materials for various divisions of the Department of Defense of the United States, as well as for private concerns. The overall operations of Douglas are carried on in several divisions such as research, designing, manufacturing and testing. The Testing Division is responsible for various kinds of testing including, but not limited to, flight testing, and customarily organizes its work on the basis of a project, that is, a new or experimental aircraft. Under the testing system, various classes of employees are assigned by Douglas to a particular project at its inception and remain with that project *338 until its completion. Both the United States Air Force and the United States Navy required in some contracts with Douglas that flight tests of new and experimental aircraft be made at certain military bases, including Edwards Air Force Base (hereinafter referred to as Edwards). Edwards is located in the Mojave Desert in California; it is 117 miles from Santa Monica, California, and 124 miles from El Segundo, California. The towns which are closest to Edwards are Lancaster, 31 miles away; Palmdale, 41 miles away and Mojave, 20 miles away. Douglas, in compliance with its contracts with the Government, has made flight and other tests at Edwards since 1947. During the years involved herein, it was difficult for Douglas to find experienced employees willing to work at Edwards because of the higher cost of living, the variable weather conditions and the poor housing conditions which prevailed in the area. To compensate for the higher cost of living all of its employees who worked at Edwards, except persons who were hired from the locality of Edwards, $7 per day in addition to their regular salaries, during the entire period such employee worked at the base. The $7 per day allowance was *339 calied a "per diem" and was paid under a travel expense form filled out by the employee. Douglas did not withhold any income tax on the allowances of $7 per day. Under Douglas' policy, Douglas classified assignments of employees to Edwards (and to other test centers) as a "temporary assignment" regardless of the length of time it was expected the employee would work there and of the number of work extensions which were made of an initial 90-day travel order, so that if an employee worked continuously at Edwards for one or two or more years the assignment continued to be classified as temporary. In instances where it was known at the time of making assignment of an employee to Edwards that he would be there for more thanthree months, his assignment was made for only three months under a travel order with the understanding that the travel order would be extended. The assignment of an employee to Edwards under a three-months' travel order did not necessarily mean that the employee's assignment would be limited to three months. For as long as an employee of Douglas remained at Edwards, he was assigned there under a 90-day travel order, or a supplemental order or orders. The use of *340 the 90-day travel orders by Douglas as the means of assigning employees to Edwards, the review thereof at the end of 90 days and the extensions of initial travel orders by supplemental orders served administrative and accounting purposes, and in many instances represented a management control device. In those instances where an employee who had been assigned to Edwards moved his family to a town near the base and rented or purchased a home there, such employee continued to be assigned to the base under a 90-day travel order, his order remained outstanding, and he continued to receive a $7 per diem allowance. Douglas knew that some of its employees who worked at Edwards moved their family residences to Lancaster or Palmdale and that some pprchased homes there, but nevertheless the travel orders and payments of the per diem allowances were continued. However, Douglas did not pay such employees' moving expenses. Petitioner Walter B. Mullens, Jr., (hereinafter referred to as petitioner) was continuously employed by Douglas from March 4, 1943, until July 1961. Petitioner was classified as an experimental flight test mechanic and assigned to the Testing Division of Douglas located *341 at Santa Monica, California. Until the summer of 1952, petitioner and his family resided in Santa Monica, California, in a rented house. In 1949 petitioner was assigned to the "X-3" project. The "X-3" project involved the design, construction, assembly and testing of an experimental airplane of radical design which Douglas had contracted to build under a contract with the United States Navy, the Air Force and the National Aeronautics and Space Administration. In connection with this project, Douglas assigned a flight test crew in the initial stages of assembly to instrumentate the aircraft and to familiarize themselves with the overall project. Petitioner, because of his past experience in hydraulies, controls rigging, instrumentation, and because of his ground flight line experience, was assigned to the "X-3" project. In 1950, petitioner was assigned for a period of several month to work with laboratory personnel on a control system mockup of the "X-3" aircraft in order to assist in the development and checking out of the complex new design incorporated therein. During the years 1949 to September 1952 petitioner attended many meetings with the Engineering Department of Douglas *342 in which improvements as to design and maintenance of the "X-3" were discussed and formulated. When petitioner was assigned by Douglas to the "X-3" project in 1949, he was aware, assuming the "X-3" contract was not terminated, that once the "X-3" was assembled and check out at the Santa Monica plant the "X-3" would be sent for testing to one of the flight test facilities regularly utilized by Douglas. During the summer of 1952 petitioner and his family moved to, and resided in, a rented house in Reseda, California, a suburb of Los Angeles. On September 11, 1952, the "X-3" aircraft was sent to Edwards for testing; petitioner accompanied the "X-3" to Edwards. At the time of his assignment to Edwards, petitioner had no idea how long it would take to test the "X-3." This difficulty in estimating the duration of the testing program was attributable to such factors as the feeling of uncertainty regarding the "X-3's" flying capabilities, the possibility of accidents, the time needed to make repairs or modifications, and the possibility of cancellation of the contract. After arriving at Edwards, petitioner lived in a rented Naval housing unit near Mojave, California. A few weeks later *343 petitioner's family joined him. In addition to moving his family, petitioner also transported his furniture to the Edwards area. Petitioner resided with his wife and children in the Navy units near Mojave until November 1954. In November 1954 petitioner rented a home in Palmdale, California. In April 1955, petitioner purchased a house in Palmdale, California. The Palmdale branch of the Bank of America financed the purchase. Petitioner worked at Edwards on the "X-3" project until it was completed in January 1954. Upon completion of the "X-3" project, petitioner was reassigned by Douglas to work on the "A3D" project. In connection with the "A3D" project, petitioner worked at the Douglas plant in El Segundo, California, during the following periods: January 13, 1954 to January 17, 1954 April 13, 1954 to April 26, 1954 July 6, 1954 to July 16, 1954 The "A3D" project was tested at Edwards, and during the period from January 13, 1954, to August 9, 1954, when he was not at the El Segundo plant, petitioner worked on the "A3D" project at Edwards. On August 9, 1954, petitioner was assigned by Douglas to work at its Long Beach, California, plant as a crew chief on the "RB66" project. *344 Petitioner returned to Edwards on September 22, 1954, as crew chief on a "RB66" flight test program. On September 23, 1955, petitioner was assigned by Douglas to its plant in Tucson, Arizona, as crew chief on a "RB66" modification and instrumentation program. Petitioner returned to Edwards as a crew chief on a "B66" flight test program on December 13, 1955. On September 14, 1956, petitioner was assigned by Douglas to its plant in Long Beach, California, to work as a crew chief on the "RB66" project. Petitioner was thereafter assigned to Douglas' El Segundo plant as a crew chief on the "A4D" project. On October 8, 1956, petitioner was returned to Edwards as crew chief on an "A4D" flight test program. During the period from September 11, 1952, through 1957 petitioner was never employed at the Douglas plant located at Santa Monica, California. Soon after petitioner and his family arrived at Edwards in September 1952, petitioner enrolled his school age children in the Mojave schools. In addition, petitioner and his children began attending services at a local Baptist church in Palmdale. During each of the years 1953 to 1957, inclusive, petitioner made contributions to said church. *345 While living in the Edwards area, petitioner established credit at several local stores, obtained loans, in addition to his mortgage loan, from the Palmdale and Lancaster branches of the Bank of America and opened a checking account first at the Mojave branch and later at the Palmdale branch of the Bank of America. In 1957, petitioner became a member of the Elks Lodge located in Lancaster. The $7 per day allowance received by petitioner amounted to $2,352 in 1953, $2,280.31 in 1954, $2,876.50 in 1955, $2,494.25 in 1956 and $2,548.00 in 1957. Petitioners reported these amounts in their income tax returns for those years as "Per Diem" or "Traveling Expenses Reimbursed" but excluded them from taxable income. Respondent has determined that the total amounts received by petitioner as per diem, with the exception of $710 in 1954, $700 in 1955 and $121 in 1956, did not qualify as a deductible expense. [2]
Opinion This is another case involving the troublesome question of whether an employee of an airplane *346 manufacturing company who is assigned by his employer to work at Edwards Air Force Base in California is entitled to deduct, under section 23(a)(1)(A) of the Internal Revenue Code of 1939 and section 162(a)(2) of the Internal Revenue Code of 1954, the per diem allowances paid to him while he was at Edwards. In Commissioner v. Flowers, 326 U.S. 465 (1946), the Supreme Court set forth three conditions which must be satisfied before a travel expense deduction is allowable. These conditions are that the expense must be a reasonable and necessary traveling expense, it must be incurred by a taxpayer while away from home, and the expense must be incurred in pursuit of business. Respondent in the instant case contends that the petitioner is not entitled to a deduction greater than the sums already allowed, since he has not satisfied the second condition set forth in Commissioner v. Flowers, supra, in that he has failed to show that the disallowed expenses incurred by him in connection with his assignment at Edwards were incurred "While away from home." It is generally agreed that for purposes of section 23(a)(1)(A) of the 1939 Code and section *347 162(a)(2) of the 1954 Code the word "home" means the taxpayer's principal place of business employment or post or station at which employed. Raymond E. Kershner, 14 T.C. 168 (1950); James R. Whitaker, 24 T.C. 750 (1955); O'Toole v. Commissioner, 243 F. 2d 302 (C.A. 2, 1957), affirming a Memorandum Opinion of this Court. This brings us to the question whether petitioner's principal place of employment during the years 1953 to 1957, inclusive, was Edwards. The issue is one of fact, and the burden of proving that respondent's determination is incorrect is on the petitioner. John J. Harvey, 32 T.C. 1368, 1378 (1959), reversed on other grounds 283 F. 2d 491 (C.A. 9, 1960); James M. Eaves, 33 T.C. 938 (1960). To satisfy his burden, petitioner must show that his assignment to Edwards was only temporary as contrasted with indefinite or indeterminate. Peurifoy v. Commissioner, 358 U.S. 59 (1958); Leo C. Cockrell, 38 T.C. 470 (1962), on appeal (C.A. 8, Sept. 25, 1962). The petitioner cannot satisfy his burden by merely showing that his employment was not permanent. Floyd Garlock, 34 T.C. 611 (1960); *348 James R. Whitaker, supra.
Petitioner, to sustain his burden, evidently relies upon the fact that he was assigned to Edwards under a 90-day travel order and that Douglas classified his assignment to Edwards as a "temporary assignment." In view of the fact that Douglas' procedures provided for reassignments for additional 90-day periods without limitation as to the number of such reassignments, and that the chief use of the 90-day travel orders was to serve administrative and accounting purposes of Douglas, we conclude that the 90-day assignment period had no relationship to the length of time that the individual so assigned might be stationed at Edwards. Furthermore, the fact that Douglas labeled petitioner's assignment as "temporary" is not determinative of the issue herein involved. Floyd Garlock, supra, page 616. We think that the petitioner's employment at Edwards was the kind to be deemed indefinite rather than temporary. The record discloses that in 1952 petitioner was assigned to Edwards to work on his employer's airplane testing projects; that it was impossible to ascertain how long a testing project would take; that during the period 1952 to *349 1957, inclusive, petitioner worked on about five projects at Edwards; and that at no time during this period did petitioner return to the Santa Monica plant of Douglas as an employee. The impossibility of ascertaining the time needed to test an aircraft, coupled with the substantial and actual duration of petitioner's stay at Edwards, indicates its indefiniteness. Josette J. F. Verrier Friedman, 37 T.C. 539, 558 (1961). In Harvey v. Commissioner, 283 F. 2d 491 (C.A. 9, 1960), reversing 32 T.C. 1368 (1959), the Court of Appeals applied a test based on the reasonable expectation of the employee as to whether his employment at the new station would be short or long. [3] Even if we were to apply the test suggested by the Ninth Circuit in Harvey v. Commissioner, supra, the result would be the same. Petitioner's expectations at the time he went to Edwards in 1952, as manifest by his actions, were not indicative of a knowledge on his part that his stay at Edwards would be short. Judging from petitioner's actions of moving his family and furnishings to the Edwards area, enrolling his children in school at Mojave, establishing credit at *350 several local stores, opening a checking account in the Palmdale bank and attending and contributing to the local church, the inference that he harbored no expectation of a short stay at Edwards becomes quite strong. Cf. Leo C. Cockrell, supra.
We, therefore, hold that petitioner during the years in question was not "away from home" within the meaning of the statute, and the sums paid to him during said years by his employer as additional living expenses were not reimbursement to petitioner for deductible business expenses in the nature of travel expenses while away from home in the pursuit of business. Decisions will be entered for the respondent. Footnotes
1. The two cases were consolidated by order of this Court dated October 31, 1961.↩
2. The amounts allowed as deductions by respondent for the years 1954, 1955 and 1956 represent reimbursed travel expenses incurred by petitioner while he was away from Edwards.↩
3. In Wright v. Hartsell, 305 F. 2d 221 (C.A. 9, 1962), the Ninth Circuit, in commenting on its decision in Harvey v. Commissioner, 283 F. 2d 491↩ (C.A. 9, 1960), stated that the Harvey decision did not reject the distinction between temporary and indefinite but only the restrictive method in which the distinction had been employed.