Charles H. B. McLendon and Eleanor R. McLendon v. Commissioner.
McLendon v. Commissioner
Docket No. 6296-65.
United States Tax Court
T.C. Memo 1967-118; 1967 Tax Ct. Memo LEXIS 142; 26 T.C.M. (CCH) 544; T.C.M. (RIA) 67118; May 29, 1967
Frank M. Kratovil, for the petitioners. George K. Dunham, for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in petitioners' income tax for the year 1964 in the amount of $627.72. Some concessions were made by petitioners in their pleadings and by stipulation. At the trial of this case petitioners further conceded that the part of the deficiency resulting from the respondent's disallowance of a deduction for the expenses incurred by petitioner Charles H. B. McLendon in traveling back and forth on weekends from Philadelphia, Pennsylvania, where he was employed, to Silver Spring, Maryland, in order to be with his wife *143 and two children who resided there was correctly determined. The issue remaining for our decision is whether certain expenditures for meals and lodging made by the abovenamed petitioner in Philadelphis are deductible as expenses of travel while "away from home" under section 162(a)(2), I.R.C. 1954. Neither party in this case submitted the reply brief permitted by Court Rule 35. Findings of Fact Some of the facts have been stipulated by the parties. The stipulation and attached exhibits are incorporated herein by this reference. Petitioners, husband and wife, reside in Silver Spring, Maryland. They filed a joint Federal income tax return for the year 1964 with the district director of internal revenue, Baltimore, Maryland. As Eleanor R. McLendon is a party hereto only because she joined in the tax return of Charles H. B. McLendon, the latter will be referred to as the petitioner. For an undisclosed period of time prior to the year in question, petitioner was employed in the Washington, D.C., area and maintained a home for himself, his wife, and his two sons in Silver Spring, Maryland. During sometime prior to 1963, petitioner was employed by the Radio *144 Corporation of America (known as RCA) as a technical illustrator preparing graphic illustrations of equipment in technical documents in connection with work done by RCA under contract for the Naval Weapons Service Office which was then located, according to the transcript of testimony herein, "at the Naval Shipyard here in Washington." The record herein does not disclose any other prior employment of petitioner nor does it show when his prior employment by RCA ceased. At sometime in 1963, RCA inquired of petitioner whether he would be interested in going to Philadelphia "and filling a contract position at the Naval Weapons System Command Office" there. Petitioner answered that he would be interested in such employment, and accordingly RCA forwarded petitioner's "resume" "to the Government office to approve the assignment." Thereupon William C. Kennedy, the supervisor of the Technical Graphics Division of the Naval Weapons Service Office at the Philadelphia Naval Shipyard where he would be working, under whom he had worked under contract when the office was located in Washington, telephoned to petitioner for the purpose of suggesting to petitioner that he obtain a civil service position *145 in his organization rather than resume his "contract status with RCA." In the course of subsequent correspondence with Kennedy, he was advised by Kennedy that no civil service appointments for which petitioner was qualified were then available in his division but that he could arrange for petitioner to be employed by private companies working on government contracts for his division until such time as a civil service appointment became available for petitioner. Accordingly, Kennedy arranged a position for petitioner as a technical illustrator with a private concern working on a government contract at the Naval Shipyard in Philadelphia. [1] Petitioner was employed by that concern from December of 1963 until June of 1964. At that time petitioner went on the payroll of a division of Philco, another private concern which was doing work at the Naval Shipyard in Philadelphia under a government contract. This transfer of petitioner's employment to Philco was arranged by Kennedy "to keep [petitioner] aboard and in the same function in the government until such time as a [civil service] appointment could be obtained." Petitioner remained with Philco for another six months doing the same *146 technical illustrating as he had been doing. In December of 1964 petitioner received from the Civil Service Commission a Temporary Appointment Pending the Establishment of a Register, known as a "taper" appointment. Petitioner continued to work at the Philadelphia Naval Shipyard until early in 1966 when he was given a "career conditional" or permanent appointment, also at the Philadelphia Naval Shipyard. Under Civil Service regulations petitioner was not eligible to request a transfer until 90 days after his "career conditional" appointment had been made. After waiting for this period petitioner applied for a transfer to Washington, D.C. An opening in Washington became available for which petitioner was accepted, and he returned to Silver Spring, a suburb of Washington, sometime during the latter part of 1966, and began work at the Naval Ordinance Systems Command Office, where he was employed at the time of the hearing in this case. Since the time of his transfer *147 to Washington, he has again resided with his family in Silver Spring, Maryland, where his family had continued to live during the time petitioner was employed in Philadelphia. It was petitioner's intent to work in Philadelphia for private contractors doing government work until he could obtain a position in Philadelphia with the United States Government under Civil Service, thereafter until he could obtain the status under Civil Service which would make it possible for him to transfer to another area, thereafter until an opening in the Civil Service should occur in the Washington area to which he could be transferred, and thereafter until he could effect such transfer. At the time he began his work in Philadelphia, petitioner recognized that the time required for him to accomplish the program intended was "completely indefinite." From December 6, 1963, until February or March of 1964, petitioner lived in a rooming house in Philadelphia. During that period petitioner took his meals at restaurants. He then took a furnished apartment which he shared with a co-worker for the remainder of 1964. During the first five weeks of 1964 petitioner expended $40 for the room in the rooming house *148 and $87.50 for meals; during the remaining 47 weeks of 1964 petitioner spent an average of $7.50 per week on food, or a total of $352.50, and an average of $20.50 per week on rental payments, or a total of $963.50. [2]
In order to be with his family, petitioner motored from Philadelphia to Silver Spring and back every weekend in 1964, weather permitting, that overtime assignments did not prevent. He estimated that he made the trip at least 46 times in that year. Opinion KERN, Judge: Petitioner contends that during the taxable year 1964 his "home" for all purposes was in Silver Spring, Maryland, that his employment in Philadelphia during that year was "temporary," and that therefore his expenses in Philadelphia during that year for meals and lodging were not personal expenses but were "traveling expenses * * * while away from home in the pursuit of a trade or business" deductible as such under section 162 (a)(2), I.R.C. 1954. [3]
*149 The general rule is that "home" as used in the quoted statute means the taxpayer's principal place of business or employment whether or not it coincides with his residence. See Commissioner v. Stidger, 386 U.S. 287 (March 20, 1967) and cases therein cited. Generally, only the traveling expenses of a taxpayer while away from his principal place of business due to the exigencies of such business would be deductible by him. See Commissioner v. Flowers, 326 U.S. 465. An exception to the general rule is made when the employment of a taxpayer in a locality other than the locality of his residence is "temporary" as contrasted with "indefinite" or indeterminate." See Peurifoy v. Commissioner, 358 U.S. 59, 60. In the instant case it is obvious that during the period from December of 1963 to some time in 1966, petitioner's only place of business was in Philadelphia. Therefore, his expenses for meals and lodging in Philadelphia during 1964 are not deductible under section 162 (a)(2) unless petitioner has proved by the evidence in this case that his employment in Philadelphia was "temporary" rather than "indefinite." See Darrell Spear Courtney, 32 T.C. 334, 342; *150 Arthur Sansone, 41 T.C. 277, 285-287. In our opinion petitioner has failed to prove this. Although he was nominally employed by three employers during the period, petitioner's job for almost three years consisted of doing the same work at the same office and the same city. We accept petitioner's testimony to the effect that he intended to return to the Washington area upon the occurrence of several anticipated events. However, the period of time before the occurrence of these events could be reasonably anticipated was conceded by petitioner to be "completely indefinite." No definite time limit was or could have been placed on his employment in Philadelphia and nothing in the record indicates that even an estimate of the time of his employment there was given to him. It is apparent that petitioner intended to work in Philadelphia for an indefinite period to be terminated only when and if certain events occurred in the indefinite future. As the events transpired, the period of his employment in Philadelphia was almost three years. On these facts we are unable to conclude that petitioner's employment in Philadelphia during the taxable year was "temporary" rather than "indefinite. *151 " Petitioner relies heavily on the case of Harvey v. Commissioner, 283 F. 2d 491, reversing, 32 T.C. 1368, which held in effect that where it is "very likely" or "quite probable" that a taxpayer's employment will be at a place other than his "home" for "an indefinite period of a few weeks or a few months" [Emphasis supplied.] because of "the requirements of his employer's business" a deduction will be available to the taxpayer under section 23 (a)(1)(A), I.R.C. 1939, which is essentially similar to section 162 (a)(2), I.R.C. 1954. Even if we were to accept the rule of this case (Cf. Commissioner v. Stidger, supra), it would not be helpful to petitioner since he has failed to prove that it was "very likely" or "quite probable" that his employment in Philadelphia would be for"a few weeks or a few months" or that he reasonably anticipated that it would be of such short duration. Decision will be entered for the respondent. Footnotes
1. Petitioner testified that this employment was engineered "under the GSA type of contract agreement with the contractors who work on a call basis or a stub basis for a given period of hours, 200, 400, 600 hours."↩
2. These amounts were agreed to by the parties during the hearing.↩
3. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * *
(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and↩