RICHARD A. LaROCCA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
La Rocca v. Commissioner
Docket No. 6767-72.
United States Tax Court
T.C. Memo 1973-185; 1973 Tax Ct. Memo LEXIS 108; 32 T.C.M. (CCH) 872; T.C.M. (RIA) 73185; August 20, 1973, Filed Richard A. LaRocca, pro se. James E. Dunn, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies of $1,102.82 and $422 in petitioner's Federal income taxes for 1966 and 1967, respectively. Petitioner received from his employer a "daily living allowance" during all of 1966 and part of 1967; he also was paid certain travel expenses in 1966. Petitioner admits that these amounts were includable in his gross income, *109 but he alleges he is entitled to offsetting deductions. The questions thus presented are as follows: 2 (1) Whether petitioner, who was assigned by his Ohio-based employer to work in Washington State with an unrelated corporation from March of 1965 to June of 1967, was "away from home in the pursuit of a trade or business" within the meaning of section 162(a) (2) [1] during any part of 1966 and 1967; and (2) Whether the travel expenses incurred by petitioner in 1966 were of a personal nature and, therefore, nondeductible under section 262. FINDINGS OF FACT Petitioner, Richard A. LaRocca, was a legal resident of Wadsworth, Ohio, at the time he filed his petition. Beginning in 1954 and continuing during all times relevant to the taxable years in issue, petitioner was employed as a design draftsman by Goodyear Aerospace Corporation (hereinafter GAC), a division of Goodyear Tire & Rubber Company, based in Akron, Ohio. On February 26, 1965, The Boeing Company (Boeing) of Renton, Washington, and GAC entered into an Engineering Assistance Agreement whereby *110 GAC agreed to furnish to Boeing 3 the services of certain GAC employees for a period of "approximately six months," commencing on or about March 15, 1965, and ending on or about September 17, 1965, subject to Boeing's right to terminate the agreement at any time. On March 12, 1965, petitioner and GAC executed an Employee Agreement for Assignment to The Boeing Company in which he agreed to remain on the Boeing assignment at least 6 months. Under the Employee Agreement, petitioner was to remain an employee of Goodyear, and in addition to his salary and travel expenses, he was to receive a "daily living allowance" of $12 per day for the first 30 days, $10 per day for the next 60 days, and $9 per day for the balance of the 6-month assignment in Washington. Petitioner was to perform substantially the same type of work at Boeing as he had performed for GAC in Akron. He began working at the Boeing assignment in Renton, Washington, on March 22, 1965. Because GAC and Boeing had extended their Engineering Assistance Agreement, petitioner agreed, on July 20, 1965, to extend his assignment under the GAC Employee Agreement to approximately March 18, 1966. Under the extension agreement, *111 petitioner's daily living allowance was increased to $10 per day. Although he was anxious to return to Ohio in 4 order to care for his mother, whom he supported, he was advised that business was slow and that GAC could not promise him a job if he decided to return in September. Later, GAC and Boeing again extended their Assistance Agreement, and petitioner agreed, on April 28, 1966, to extend his assignment until approximately June of 1967. When his first extension agreement expired on March 18, 1966, petitioner was aware that GAC was planning another extension. He completed his Beoing assignment on or about July 16, 1967, and thereafter returned to Ohio. Upon moving to Washington in March of 1965, petitioner first stayed at a motel for a couple of days, and then, for the remainder of his assignment, rented apartments which he sometimes shared with other GAC employees. He continued to maintain his 75-year-old mother in his own home in Wadsworth, Ohio. Also, while in Washington, petitioner retained an Ohio checking account and Ohio driver's license, supported an Ohio church, and voted in Ohio. However, he had a savings account in Washington and licensed his automobile *112 in that State. In 1966, petitioner made two round trips from Renton, Washington, to Wadsworth, Ohio. The trips furthered no business purpose, but instead allowed him to attend to 5 personal matters in Wadsworth. He was advanced $300 per trip by GAC on the condition that he would submit a travel voucher substantiating his expenses. If the actual travel expenditures were less than $300, the difference was to be returned to GAC. Of the $600 advanced in 1966, petitioner actually spent $570.24 for travel and refunded $29.76 to GAC. In the notice of deficiency, respondent determined that petitioner received daily living allowances totaling $3,550 and $1,680 in 1966 and 1967, respectively, which amounts were not reported in petitioner's income tax returns and were not deductible under sections 62(2) (B) and 162(a) (2). Petitioner does not deny that he received the amounts in question, but alleges that the allowances paid by GAC are offset by deductions under section 162(a) (2). Respondent determined that petitioner received payment of $608.44 in 1966 from GAC for personal travel, which amount was not included in petitioner's gross income. Petitioner admits that he received *113 advances from GAC for personal travel, but alleges he received only $600 in advances in 1966, $29.76 of which was ultimately returned to GAC under the terms of the advancement. 6 OPINION Section 162(a) (2) provides that there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business including "traveling expenses * * * while away from home in the pursuit of a trade or business." The first issue confronting us is whether petitioner was "away from home," as that term is used in section 162(a) (2), during any part of 1966 or 1967. The question and circumstances of this case are almost identical to those in Walter P. Stricker, 54 T.C. 355 (1970), affd. 438 F.2d 1216 (C.A. 6, 1971). There a fellow GAC employee of petitioner's was assigned to Boeing under the same Employee Agreement, the only difference in the agreement being that Stricker's first extension lasted until approximately June 18, 1966, and not March 18, 1966, as in petitioner's case. [2] Also, Stricker entered into his second assignment extension agreement on June 10, 1966, instead of April 28, 1966, as *114 in the instant case. In Stricker, which involved only the year 1967, this Court held that the 1967 7 daily living allowance payments were not deductible, stating (54 T.C. at 361-362): In the case of a taxpayer who is on a work assignment away from his principal place of employment, this Court has established its position that is "away from home" only when his assignment is for a "temporary" as distinguished from a substantial," "indefinite," or "indeterminate" period of time. We have characterized an employment as being "indefinite" if its termination cannot be foreseen within a fixed or reasonably short period of time. John J. Harvey, 32 T.C. 1368, revd. 283 F.2d 491, 492 (C.A. 9, 1960), and the cases cited therein. See also Ronald D. Kroll, 49 T.C. 557. * * * His [Stricker's] assignment to Boeing, as of June 10, 1966 [the date Stricker extended his employment agreement with Goodyear to remain in Seattle until June 1967], was both for an "indefinite" *115 and for a "substantial" period of time as distinguished from "temporary." And, there was a reasonable probability known to him that he would be employed at Boeing for a "long period of time" within the meaning of the Harvey test. * * * Although there are some differences between the personal circumstances of Stricker and petitioner, we nevertheless view the material facts of the two cases as indistinguishable. This is particularly true with respect to the temporary-versus-indefinite character of petitioner's stay in Washington. Accordingly, we follow the Stricker case. We hold that petitioner's assignment to Boeing lost its temporary character on 8 April 28, 1966, the date petitioner extended his assignment to June of 1967. Petitioner may deduct the daily living allowances received prior to that date, but respondent's determination is sustained as to those allowances received for the balance of 1966 and for 1967. Petitioner admitted at trial that the costs of the travel between Renton and Wadsworth were incurred for personal reasons. Therefore, we hold such payments are nondeductible under section 262. Under the terms of the employee extended assignment agreements *116 with GAC, petitioner was advanced a total of $600 during 1966 on the condition that he would return to GAC any amount not actually spent for travel. The amount returned was $29.76 in petitioner's case. Accordingly, we hold petitioner is taxable on $570.24 of the GAC travel advanced received in 1966. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue. ↩
2. We note, however, that the extension date in the July 20, 1965, extension agreement evidently read "6-18-66" before the date was changed to read "3-18-66." ↩