GILBERT C. BARELA AND CAROL F. BARELA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Barela v. Commissioner
Docket No. 6411-80.
United States Tax Court
T.C. Memo 1981-405; 1981 Tax Ct. Memo LEXIS 334; 42 T.C.M. (CCH) 575; T.C.M. (RIA) 81405; August 6, 1981. *334 Held, petitioner was not "away from home" within the meaning of section 162(a)(2), I.R.C. 1954, and, therefore, expenses incurred for travel, meals, and lodging with respect to his employment are nondeductible. Held further, additional deductions for various expenses claimed by petitioner on his return denied. Gilbert C. Barela, pro se. James J. Everett, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined a deficiency of $ 2,952 in petitioners' 1977 Federal income tax. After concessions, the remaining issues for decision are: 1. Whether expenses deducted by petitioner Gilbert C. Barela with *335 respect to his employment at a power plant project were incurred while he was "away from home" within in meaning of section 162(a)(2). [1]
2. Whether petitioners are entitled to deductions for medical and dental expenses, state and local taxes, and miscellaneous expenses in excess of the amounts allowed by respondent. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Gilbert C. Barela (hereinafter petitioner) and Carol F. Barela, husband and wife, resided in Snowflake, Arizona, when they filed their petition in this case. They filed their 1977 joint Federal income tax return with the Internal Revenue Service Center, Ogden, Utah. Petitioner is an electrician and a member of Union Local 387 in Phoenix, Arizona. On November 23, 1976, petitioner was hired by the Bechtel Power Corporation (jereinafter Bechtel) to work on the construction of the Cholla Power Plant project (hereinafter the Cholla plant) in Joseph City, Arizona. This employment was obtained through assignment by Union Local 518 in Globe, Arizona. Bechtel was the general contractor for the Cholla *336 Plant as well as the Coronado Power Plant project (hereinafter Coronado plant), both of which are located in northern Arizona. The Cholla plant was initially placed in service with one coal-fired generating unit in 1962. In 1973, Bechtel and Union Local 518 entered into a project agreement for the construction of two additional units at that facility. This agreement was renegotiated in 1976 to include the construction of a fourth unit. It was common knowledge to the electricians who were hired through Union Local 518 that the 1973 agreement had been renegotiated to include the construction of unit 4. Construction of unit 2 at the Cholla plant began in 1973. Work on the third and fourth units commenced in 1975 and 1978, respectively. At the initiation of construction, Bechtel projected completion of each unit within approximately 2-3 years. In 1975, Bechtel employed 77 electricians at the Cholla plant. At the peak of its construction activity in 1978, Bechtel employed approximately 500 electricians at the Cholla plant and another 500 at the Coronado plant site. During the time that construction was being carried on at the Cholla and Coronado plants, Union Local 518 *337 had a membership of between 250 and 350 local (Book I) electricians. However, since the union could not satisfy the demand for electricians at these plants from its own ranks, it hired so-called traveling wiremen from other parts of the state, of which petitioner was one. Traveling wiremen were classified by the union as either Book II or Book III electricians. According to union rules, all traveling wiremen were to be laid off before local electricians. Prior to 1973, Union Local 518 allowed traveling wiremen who were employed in its jurisdiction for a specified period to become Book I electricians upon completion of a wireman examination. In 1974, petitioner completed this examination and applied for Book I classification. The union, however, had closed its charter to additional members in 1973 and, therefore, it denied petitioner's application. Throughout the period of his employment at the Cholla plant, petitioner was classified as a Book III electrician. From 1975 through the peak period in 1978, the prospects of an employee, who performed satisfactory work, remaining on the job at the Cholla plant were good. During these years, Bechtel tried to schedule its work so that *338 it could maintain continuity in its work force at the plant. This effort on the part of Bechtel reduced the number of potential layoffs. Many of the electricians employed by Bechtel at the Cholla plant have worked on that project from 1973 until the date of trial. When petitioner commenced employment at the Cholla plant, the second generating unit was 90 percent completed and the third unit was 75 percent completed. Petitioner was initially assigned to the lighting crew in unit 2, and upon completion of their work in August 1977, petitioner's crew was assigned to unit 3. Petitioner was employed by Bechtel at the Cholla plant continuously for 47 months from November 23, 1976 until October 24, 1980. Prior to July 1979, petitioner maintained a residence in Globe, Arizona. During 1977, petitioner lived in Holbrook, Arizona, during the week while working at the Cholla plant and commuted to his home in Globe on weekends in order to be with his family. The round-trip from Globe, Arizona, to Joseph City, Arizona, is 386 miles. On his 1977 Federal income tax return, petitioner claimed an employee business expense of $ 7,909.20, consisting of deductions for meals and lodging in *339 Holbrook, Arizona, and round-trip mileage from his Globe, Arizona, residence to the Cholla plant jobsite at Joseph City, Arizona. In his notice of deficiency, respondent disallowed such deduction. Petitioner also claimed a deduction of $ 1,738 on his 1977 return for medical and dental expenses. Respondent disallowed the entire deduction for lack of substantiation. Respondent subsequently conceded that petitioner is entitled to claim $ 419.25 as a medical and dental expense not compensated for by insurance. Petitioner also claimed a deduction of $ 1,968.27 on his 1977 return for the following state and local taxes paid in that year: State and local income taxes
$ 823.75
State and local gasoline taxes
491.75
General sales tax
631.52
Sales tax on washing machine purchased
21.25
Total
$ 1,968.27
In his statutory notice, respondent disallowed the deduction for lack of substantiation. Respondent subsequently conceded that petitioner is entitled to a deduction of $ 429 for general sales taxes paid in 1977 based on the 1977 state sales tax table. At trial, respondent also conceded that petitioner is entitled to claim deductions for state income taxes and *340 state and local gasoline taxes in the respective amounts of $ 428.75 and $ 168. Finally, petitioner claimed miscellaneous deductions totalling $ 1,195.60 for union dues and work clothes. Respondent disallowed the deduction in the statutory notice for lack of substantiation. Respondent conceded that petitioner is entitled to a deduction for union dues in the amount of $ 1,012.69. During the trial, respondent also conceded that petitioner is entitled to a deduction of $ 118.52 for work clothes related to his employment at the Cholla plant. OPINION Issue 1: Travel Expense Deductions
The first issue for decision is whether expenses deducted by petitioner for mileage, meals and lodging with respect to his employment at the Cholla plant were incurred while he was "away from home" within the meaning of section 162(a)(2). Section 162(a)(2) allows a taxpayer to deduct traveling expenses (including amounts expended for meals and lodging) incurred while away from home in the pursuit of a trade or business. In order to deduct these expenses, the taxpayer must establish: (1) the expenses were ordinary and necessary; (2) the expenses were incurred "while away from home," and (3) *341 the expenses were incurred in the pursuit of a trade or business. Commissioner v. Flowers, 326 U.S. 465 (1946); Foote v. Commissioner, 67 T.C. 1, 3 (1976); Bochner v. Commissioner, 67 T.C. 824, 827 (1977). As used in section 162(a)(2), the word "home" has been consistently defined by this Court as meaning the vicinity of the taxpayer's principal place of employment and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. Mitchell v. Commissioner, 74 T.C. 578, 581 (1980); Foote v. Commissioner, 67 T.C. 1, 4 (1976); Kroll v. Commissioner, 49 T.C. 557, 561-562 (1968). An exception to this general rule exists, however, when a taxpayer accepts temporary as opposed to indefinite employment away from his residence and usual place of business. Commissioner v. Peurifoy, 254 F. 2d 483, 486 (4th Cir. 1957), affd. 358 U.S. 59 (1958); Kroll v. Commissioner, supra.Under this exception, the taxpayer's "tax home" does not shift to the vicinity of his temporary *342 employment and, therefore, he is regarded as "away from home" while working at such location. The purpose underlying this exception is to relieve the taxpayer of the burden of duplicate living expenses while at a temporary employment location, since it would be unreasonable to expect him to move his residence under such circumstances. Tucker v. Commissioner, 55 T.C. 783, 786 (1971). This Court has held that employment is temporary if its termination within a short period can be foreseen. Mitchell v. Commissioner, supra at 581; Albert v. Commissioner, 13 T.C. 129, 131 (1949). Similarly, we have stated that employment is indefinite if its termination within a fixed or reasonably short period of time cannot be foreseen. Stricker v. Commissioner, 54 T.C. 355, 361 (1970), affd. 438 F. 2d 1216 (6th Cir. 1971). Furthermore, to qualify for a travel expense deduction under the temporary employment exception, the employment must be temporary in contemplation at the time of its acceptance and not indeterminate in fact as it develops. McCallister v. Commissioner, 70 T.C. 505, 509 (1978). *343 The Court of Appeals for the Ninth Circuit, to which an appeal from this case would lie, has devised its own test for determining whether a taxpayer who accepts employment away from his well established "tax home" is entitled to deduct his travel expenses. In Harvey v. Commissioner, 283 F. 2d 491 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), the Court of Appeals set forth its rule as follows: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double tax burden that the Congress intended to mitigate. * * * [283 F. 2d at 495; emphasis in original.] Subsequent opinions by the Ninth Circuit on the same question reveal that its approach to the exception to the general "tax home" rule does not differ materially from the view of this Court. See Coombs v. Commissioner, 608 F. 2d 1269, 1274-1276 (9th Cir. 1979), *344 affg. in part and revg. in part 67 T.C. 426 (1976); Wills v. Commissioner, 411 F. 2d 537, 541 (9th Cir. 1969), affg. 48 T.C. 308 (1967); Wright v. Hartsell, 305 F. 2d 221, 224 (9th Cir. 1962). On this record, however, it is unnecessary to discuss what differences, if any, exist between the two approaches because we conclude that under either the temporary-indefinite test of this Court or under the Harvey test, petitioner was not "away from home" while employed at the Cholla plant. The facts establish that petitioner was hired in November 1976 as an electrician to work on the Cholla Power Plant project in Joseph City, Arizona. At the time he accepted such employment, petitioner was obviously aware that the project involved the construction of several generating units and that work at the jobsite would last for many years. He also knew that his employer, Bechtel, was building another power plant in northern Arizona and that this project also created a demand for electricians such as petitioner. [2] In fact, the need was particularly acute because the local union only had a membership of 250 to 300 electricians and, *345 at the peak of construction activity at both the Cholla and Coronado projects, approximately 1,000 electricians were employed. Although petitioner had no assurance of tenure at the Cholla plant, we are convinced on this record that when he began working in Joseph City, there was a reasonable probability known to him that his employment would last for "a long period of time" and that he did not foresee termination of such employment "within a short period." Petitioner argues, however, that since he was a Book III electrician during 1977, he could have been laid off at any time and, therefore, it was not reasonable to expect him to move his residence from Globe to Joseph City. We disagree. The record fails to support petitioner's claim that his employment was jeopardized by virtue of his Book III classification. Indeed, despite his lack of seniority in the event of layoffs, petitioner was continuosuly employed at the Cholla plant for almost four years. [3] Moreover, he offered no evidence showing that any Book III electrician was laid off due to his *346 status as such. In view of the remote location of the Cholla plant and the fixed supply of union electricians, it is apparent that traveling wireman (Books II and III) were essentially insulated from layoffs based on their classification. See Garlock v. Commissioner, 34 T.C. 611, 616 (1960). In this connection, the record also shows that Bechtel made every effort to minimize the possibility of layoffs through proper scheduling of its work at the site. Finally, we note that a labor relations representative from Bechtel testified that prospects for continued employment at the Cholla plant were good and that many of the electricians have been working there since the expansion of the facility began in 1973. For the foregoing reasons, we conclude that petitioner's tax home during 1977 was in the vicinity of Joseph City, Arizona, and that his expenses for meals, lodging, and transportation *347 while working at the Cholla plant are not deductible as "away from home" travel expenses. Issue 2: Substantiation of Various Deductions
On his 1977 return, petitioner claimed a deduction of $ 1,738 for medical and dental expenses. Respondent initially disallowed the entire deduction for failure of substantiation, but subsequently conceded that petitioner is entitled to a deduction of $ 419.25. With respect to the balance of the claimed deduction, petitioner presented no documentation of any kind. In view of the lack of any substantiation, we must conclude petitioner is not entitled to a medical and dental expense deduction in excess of the amount conceded by respondent. Petitioner also claimed a deduction of $ 1,968.27 for various state and local taxes, which was disallowed by respondent in the notice of deficiency for failure of substantiation. Respondent subsequently conceded that petitioner is entitled to a deduction in the amount of $ 1,025.75. Again, petitioner offered no documentation to substantiate that he incurred and paid taxes in excess of that allowed by respondent. Accordingly, we must hold for respondent. Finally, petitioner claimed a miscellaneous *348 expense deduction of $ 1,195.60 for union dues and work clothes. Of this amount, respondent has conceded that petitioner is entitled to a deduction of $ 1,131.21. Petitioner failed to offer any evidence, however, to establish his entitlement to any greater deduction. Accordingly, we conclude that he is not entitled to a miscellaneous expense deduction in excess of the amount allowed by respondent. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. At trial, petitioner testified that he had worked at the Coronado plant prior to accepting employment at the Cholla plant.↩
3. We note that the substantial and actual duration of petitioner's employment is persuasive evidence of the indefiniteness of his employment. McCallister v. Commissioner, 70 T.C. 505, 510 (1978); Garlock v. Commissioner, 34 T.C. 611, 616↩ (1960).