LARRIE R. BROWN and GERTRUDE BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 13337-81.
United States Tax Court
T.C. Memo 1983-217; 1983 Tax Ct. Memo LEXIS 561; 45 T.C.M. (CCH) 1364; T.C.M. (RIA) 83217; April 25, 1983. Douglas K. Cook, for the petitioners. Walter T. Thompson, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies in petitioners' 1977 and 1978 Federal income *562 taxes in the amount of $3,848 and $3,896, respectively. After concessions, the issues for decision are: (1) Whether traveling expenses incurred by petitioner Larrie R. Brown with respect to his employment are deductible under section 162(a)(2), [1] and (2) Whether the claimed traveling expenses, if deductible, have been adequately substantiated under section 274(d). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Larrie R. Brown (hereinafter petitioner) and Gertrude Brown, husband and wife, resided in Mesa, Arizona, when they filed their petition in this case. They filed their 1977 and 1978 joint Federal income tax returns with the Internal Revenue Service Center, Ogden, Utah. Petitioner is an electrician and a member of the International Brotherhood of Electrical Workers (hereinafter IBEW), Local 769, in Phoenix, Arizona. Specifically, petitioner is a journeyman lineman and is not a steady employee of one organization. Journeymen linemen tend to be nomadic, seeking employment where there is an excess of work. In July 1973, petition moved with *563 his family from Florida to Mesa, Arizona, and established his membership in Phoenix Local 769 (hereinafter Local 769). [2] at that time petitioner was employed by Power City to build electrical lines into several mines near Globe, Arizona. In approximately August 1974, this employment was terminated and petitioner signed the out of work books at Local 769. Unable to find a job in Arizona, [3] petitioner then went to Montana where he secured employment for approximately two months. Petitioner returned to Arizona, signed the out of work books and, finding no local employment, moved to Anchorage, Alaska, in November 1974. In Anchorage, he signed for work on the books of Anchorage Local 1547 (hereinafter Local 1547). *564 Local 1547 utilizes a job referral system under which its members are assigned to various jobs according to the position of their names on certain books. [4] Book one includes workers who are members of the local, and travelers from sister locals who have worked in Alaska for a specified period of time and have been voted into book one status. Book two includes all workers not qualified for book one who are seeking employment through Local 1547. When a job becomes available, priority is given to book one workers. Since each book is operated on a first-in first-out basis, a union member whose name appears on the bottom of book two will not be referred by the union to a job until all workers on book one and all workers above him on book two have been referred. Moreover, union rules require that all book two workers be terminated before book one workers. From November 1974 to December 1978, petitioner was dispatched out of Anchorage Local 1547 to *565 the following jobs in Alaska: Approx.
Employer
Commencement
Termination
Duration
Wire Communications Corp.
Nov. 1974
Nov. 1974
2 weeks
City Electric, Inc.
Dec. 1974
Feb. 1976
15 months
Hardline Electric, Inc.
May 1976 [5]
June 1976
2 months
City Electric, Inc.
June. 1976
Oct. 1976
5 months
Rogers Electric Corp.
Nov. 1976
April 1978
18 months [6]
Hardline Electric, Inc.
May 1978
July 1978
3 months
Rogers Electric Corp.
Aug. 1978
Sept. 1978
2 months
Harldine Electric, Inc.
Oct. 1978
Dec. 1978
3 months
In December 1978, petitioner signed the out of work books at Local 1547 and traveled to Mesa, Arizona, to be with his family for the Christmas holidays. While in Arizona, petitioner learned of a supervisory job in Tucson and signed the out of work books of Local 769 on December 22, 1978. [7] A supervisory job is not subject to normal union job referral procedures, and petitioner was immediately *566 hired notwithstanding his position on Local 769's out of wok books. [8] Petitioner worked in Arizona for six months and then returned to Alaska in June 1979, where he registered to vote and established book one status. To be eligible for job referrals from a specific local, IBEW rules require that members' names appear on the local's out of work books. In addition, individuals must personally appear at a specific local to place their names on that local's out of work books. Petitioner did not seek job referrals during 1977 since he was employed throughout that year by Rogers Electric. During 1978, petitioner consistently sought job referrals at Local 1547 by signing the out of work books upon termination of each job. Generally, petitioner obtained *567 employment within a few days of signing the out of work books. At no time in 1978 was petitioner unemployed for a period exceeding seven days and, on three of the five referrals that he received during such year, he obtained employment within two days of signing book two. Petitioner spent a total of 50 and 49 weeks, respectively, in Alaska during 1977 and 1978. Throughout his employment in Alaska, petitioner owned a residence in Mesa, Arizona, where his wife and two children lived. Prior to 1977, and continuing through most of December 1978, petitioner resided in an apartment in Anchorage. During 1977 and 1978, petitioner traveled to his home in Mesa, Arizona, once each year for Christmas. On his 1977 and 1978 Federal income tax returns, petitioner claimed employee business expenses of $11,419 and $10,224, respectively, consisting of deductions for meals and lodging in Anchorage, Alaska, transportation expenses within Alaska, and travel expenses between Anchorage and Phoenix. In the notice of deficiency, respondent disallowed these deductions in their entirety. [9]
*568 OPINION Issue 1: Travel Expense Deduction
The first issue for decision is whether expenses for lodging, meals, and travel were incurred by petitioner while he was "away from home" within the meaning of section 162(a)(2). As a general rule, deductions for personal expenses are disallowed under section 262. Section 162(a)(2), however, allows a taxpayer to deduct traveling expenses if he can establish that they were: (1) ordinary and necessary; (2) incurred while "away from home"; and (3) incurred in the pursuit of a trade or business. Commissioner v. Flowers,326 U.S. 465, 470 (1946); Bochner v. Commissioner,67 T.C. 824, 827 (1977). This Court has consistently held that a taxpayer's "home" for purposes of section 162(a)(2) is the vicinity of his principal place of business or employment, and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Kroll v. Commissioner,49 T.C. 557, 561-562 (1968); Garlock v. Commissioner,34 T.C. 611, 614 (1960). An exception *569 to this rule exists, however, where a taxpayer accepts employment away from his tax home which is temporary as opposed to indefinite. Peurifoy v. Commissioner,254 F. 2d 483, 486 (4th Cir. 1957), affd. per curiam 358 U.S. 59 (1958). Under this exception, the taxpayer's "tax home" does not shift to the vicinity of his temporary employment and, therefore, he is regarded as "away from home" while working at such location. The purpose underlying this exception is to relieve the taxpayer of the burden of duplicate living expenses while at a temporary employment location, since it would be unreasonable to expect him to move his residence under such circumstances. Tucker v. Commissioner,55 T.C. 783, 786 (1971).
Employment is temporary if its termination within a short period of time can be foreseen. Mitchell v. Commissioner,supra;Albert v. Commissioner,13 T.C. 129, 131 (1949). Employment is indefinite if either its termination within a fixed or reasonably short period of time cannot be foreseen, Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F. 2d 1216 (6th Cir. 1971), *570 or it continues for a substantial or indefinite duration. Garlock v. Commissioner,supra at 615. Furthermore, if employment which was temporary in contemplation at the date of its commencement becomes indeterminate in duration, "the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner,supra at 562; McCallister v. Commissioner,70 T.C. 505, 509 (1978). Bark v. Commissioner,6 T.C. 851, 854 (1946). Employment may change from temporary to indefinite "due to changed circumstances, or simply by the passage of time." Norwood v. Commissioner,66 T.C. 467, 470 (1976). Each case in this heavily litigated area turns on its own facts. Commissioner v. Peurifoy,254 F. 2d 483 (4th Cir. 1957), affd. per curiam 358 U.S. 59, 61 (1958); Norwood v. Commissioner,supra at 469-470. The burden of proving that his employment was temporary rests on the taxpayer. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The Court of Appeals for the Ninth *571 Circuit, to which an appeal from this case would lie, has devised its own test for determining whether a taxpayer's "tax home" has shifted to his present place of employment. In Harvey v. Commissioner,283 F. 2d 491 (9th Cir. 1960), revg. 32 T.C. 1368 (1959), the Court of Appeals set forth its rule as follows: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the double burden that the Congress intended to mitigate. * * * [Emphasis in original; 283 F. 2d at 495.] Subsequent opinions by the Ninth Circuit on the same question reveal that its approach to the exception to the general "tax home" rule does not differ materially from the view of this Court. [10] See Coombs v. Commissioner,608 F. 2d 1269, 1274-1276 (9th Cir. 1979), affg. in part and revg. in part 67 T.C. 426 (1976); Wills v. Commissioner,411 F. 2d 537, 541 (9th Cir. 1969), *572 affg. 48 T.C. 308 (1967); Wright v. Hartsell,305 F. 2d 221, 224 (9th Cir. 1962), affg. 182 F. Supp. 725 (E.D. Idaho 1960). On this record, however, it is unnecessary to discuss what differences, if any, exist between the two approaches because we conclude that under either the temporary-indefinite test of this Court or under the Harvey test, petitioner was not "away from home" while employed in Alaska. Petitioner contends that the work he did at each employment site constituted a separate and distinct temporary job and that his home for tax purposes was in Mesa, Arizona, throughout the years in issue. Respondent, on the other hand, maintains that Anchorage, Alaska, was petitioner's principal place of business or employment and thus *573 his tax home, so that expenses incurred in Anchorage were not deductible. Respondent alternatively contends that petitioner failed to substantiate adequately the claimed expenses. In support of his position that the separate jobs were temporary in nature, petitioner argues that he was employed at many different job sites by several unrelated employers; he always knew the termination date of each job; the union employment referral system caused him to be the last hired and the first fired; and the nature of his work made it impossible to know whether and for how long he would be employed at any one time making it unreasonable to consider moving his family to Alaska.
On the record before us, we believe that petitioner's tax home during the years in issue was Anchorage, Alaska. Our decision is based among other things on the policy behind the away from home provision. Only where the exigencies of a trade or business require the taxpayer temporarily to maintain two places of abode will the dplicate living expenses be deductible. The fundamental issue, therefore, is whether in a particular case it is reasonable to expect the taxpayer to maintain a residence near his trade or business *574 and thereby incur only one set of living expenses (which are nondeductible under section 262). Kroll v. Commissioner,supra at 562. We believe that during the years in issue, it would have been reasonable to expect petitioner to move his residence to Anchorage where he was continually employed. First, Anchorage was the center of his income-producing activities and he knew that he was likely to obtain employment there which was consistent with this qualifications and the nature of his job. Petitioner's own testimony established that there was "a lot of work" in the Anchorage area during the years in issue. Second, petitioner only made himself available for work in Alaska. This is a clear objective statement of his intent to make Anchorage his place of employment for an indefinite period. Kroll v. Commissioner,supra at 563. By the end of 1978, petitioner had spent more than four years working in and around Anchorage, including one job with Rogers Electric which lasted throughout 1977 and into early 1978. When this position with Rogers was terminated in April 1978, and on every occasion where he was actively seeking a job, petitioner *575 signed the out of work books at Local 1547, knowing that he would only be eligible for job referrals in the Anchorage area. This persistent and successful search for work in Anchorage indicates tat he did not intend to have the duration of his employment away from Mesa, Arizona, depend on the success or failure of one job. [11]
*576 Finally, petitioner's testimony, that few jobs were available in Arizona for journeymen linemen, suggests that his decision to retain a home in Arizona was made for personal reasons that were despite, rather than because of, the exigencies of his trade or business. Tucker v. Commissioner,55 T.C. 783, 787 (1971). Under these circumstances, we conclude that Anchorage, Alaska, was petitioner's tax home during the years in issue. Moreover, since petitioner's testimony established that he stayed in Alaska because he thought there was a lot of work available there, we think that the same conclusion should be reached under the Harvey test. Harvey v. Commissioner,283 F. 2d 491 (9th Cir. 1960), revg. and remg. 32 T.C. 1368 (1959). Our concern is with the taxpayer's principal place of employment and, while the duration of each job is an indicia of temporariness in a given location, when employment is consistently obtained for a significant number of years within a reasonably confined geographic area, the geographic area where the work is consistently performed is the taxpayer's "tax home." See Kroll v. Commissioner,supra at 561-564. *577 For the foregoing reasons, we conclude that petitioner's tax home during 1977 and 1978 was in the vicinity of Anchorage, Alaska, and that his travel expenses are not deductible in excess of the amount allowed by respondent. [12] Our resolution of this issue makes it unnecessary to address respondent's other arguments relating to substantiation of expenses under section 274. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. The record is not entirely clear with respect to petitioner's membership in different union locals. Apparently, petitioner originally joined Phoenix Local 769 in 1963; transferred his membership to a Texas local in 1969; transferred his membership to Florida Local 108 in 1970 then finally reestablished his Phoenix local membership in 1973. ↩
3. To obtain job referrals through a local union hall, an unemployed IBEW member must place his name on one of several books consisting of all members seeking employment through that local.↩
4. At some point during petitioner's stay in Alaska, Local 1547 changed from a four book to a two book system. Since the record in the instant case described the two book system, this is what we have referred to in our opinion.↩
5. The record shows an unexplained three-month gap in petitioner's employment during 1976. ↩
6. During this eighteen-month period, petitioner worked on five or six projects without being laid off between assignments.↩
7. In order to comply with IBEW rules which prohibit members from being on the out of work books in one local while working in another, petitioner removed his name from Local 1547's out of work books prior to beginning his supervisory job. ↩
8. The job referral procedures at Local 769 were the same as those at Local 1547 to the extent that job referrals normally went to those whose names appeared at the top of the appropriate list.↩
9. Respondent subsequently allowed petitioner deductions of $205 for air fare from Anchorage, Alaska, to Phoenix, Arizona, and $260 for meals, lodging and local transportation in connection with his return to Phoenix in December 1978, and his job assignment in Tucson, Arizona.↩
10. In Coombs v. Commissioner,608 F. 2d 1269 (9th Cir. 1979), affg. in part and revg. in part 67 T. C. 426↩ (1976), the court stated at 1274: On review of the cases, * * * we have developed through the years the rule, * * * that, for purposes of section 162(a)(2), a regularly employed "taxpayer's 'home' is his abode at his principal place of business or employment."
11. As we stated in Lollis v. Commissioner,T.C. Memo. 1983-89, fn. 4: "[W]ork in the construction industry is, by its very nature, impermanent. It is, moreover, largely transient as workers move from site to site, often traveling substantial distances to find employment. The courts have not, however, recognized a construction worker exception, allowing all such workers to deduct travel expenses. Rather, each case is judged on its own facts." [Citations omitted.] The Court went on to state: "[T]emporary work is restricted to that which can be expected to last for only a short period of time; indefinite work is all other work -- that which is anticipated to last (or does last) for an indeterminate duration, for a rather long duration, or for any period of time other than a short one." Lollis v. Commissioner,supra↩ at fn. 5. [Emphasis supplied.]
12. See footnote 9.↩