RALPH A. MYHRMAN AND R. CLAIRE MYHRMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Myhrman v. Commissioner
Docket No. 29891-81.
United States Tax Court
T.C. Memo 1985-333; 1985 Tax Ct. Memo LEXIS 301; 50 T.C.M. (CCH) 354; T.C.M. (RIA) 85333; July 8, 1985. *301 Petitioners resided in Scottsdale, Arizona. From March 1976 through November 1981, petitioner-husband was assigned by Comprehensive Designers, Inc., to work on various projects for General Electric in Burlington, Iowa. Petitioner-husband lived in Burlington and worked for General Electric almost continuously during this period. Held: Petitioner-husband's employment in Burlington, Iowa, in 1979 was indefinite rather than temporary; his 1979 expenses for transportation, food, and lodging while in Burlington are not deductible expenses incurred while traveling "away from home". Sec. 162(a)(2), I.R.C. 1954. Lawrence J. Lee, for the petitioners. Doreen M. Susi, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1979 in the amount of $5,321.21. After concessions, the issue for decision [1] *302 is whether petitioners may deduct expenditures for transportation, food, and lodging under section 162(a)(2)[2], on account of petitioner-husband's employment in Burlington, Iowa. FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Ralph A. Myhrman (hereinafter sometimes referred to as "Ralph") and R. Claire Myhrman (hereinafter sometimes referred to as "Claire"), husband and wife, resided in Scottsdale, Arizona. Ralph is a mechanical designer and was so in 1979. Ralph and his family moved from Ohio to Scottsdale, Arizona, in 1959. The move to Arizona was suggested by their doctor in order to relieve Claire's aggravated allergy condition. Ralph's employment history since his arrival in Arizona is shown in table 1. Table 1 Approx.
Employer
Job Description
Commencement
Termination
Duration
Talley Industries,
Inc.
Tool Designer
Dec. 1959
Dec. 1969
10 yrs
Mesa, Arizona
Paramount
Design, Inc.
Contract Designer
Dec. 1969
April 1970
4 mos.
Phoenix, Arizona
B & K Enterprises
Real Est. Salesman
May 1970
Sept. 1970
4 mos.
Phoenix, Arizona
Western American
Real Est. Salesman
Sept. 1970
July 1971
10 mos.
Realty & Invest. Co.
Scottsdale, Arizona
Universal Propulsion
Design Draftsman
Aug. 1971
Feb. 1973
18 mos.
Co., Tempe, Arizona
Los Charrow Rest.
Partner
Feb. 1973
June 1973
4 mos.
Phoenix, Arizona
Indian Bend Apts.
Ass't Manager
June 1973
Oct. 1973 *
4 mos.
Scottsdale, Arizona
Fountain Realty &
Real Est. Salesman
July 1973 *
Feb. 1974
7 mos.
Invest. Co.
Fountain Hills, Ariz.
Comprehensive
Designers,
Inc., Maryland
Hts., Mo.
Assigned to: McDonnell Douglas
Tool Designer
Feb. 1974
April 1974
2 mos.
Tulsa, Oklahoma
Assigned to: Bendix Corp.
Tool Designer
April 1974
June 1974
2 mos.
Davenport, Iowa
Assigned to: J.I. Case Co.
Sr. Design
June 1974
Sept. 1975
16 mos.
Burlington, Iowa
Draftsman
Assigned to: Walker Mfg. Co.
Tool Designer
Sept. 1975
Nov. 1975
2 mos.
Jonesboro, Ark.
Assigned to: Wheelabrator-Frye,
Product Designer
Jan. 1976
Feb. 1976
1 mo.
Inc., Mishawaka,
Indiana
Assigned to: General Electric Co.
Product Designer
Mar. 1976
Mar. 1977
11 mos.
Burlington, Iowa
(Design low-volt-
age switchboard)
(Build switch
Mar. 1977
Jan. 1978
10 mos.
gears)
(Design elec.
Feb. 1978
Sept. 1978
7 mos.
ground and
test unit)
(Solve problem
Sept. 1978
Dec. 1978
3 mos.
in switch gear)
(Work on short
Dec. 1978
April 1979
4 mos.
stack)
(Work on phasing
May 1979
Sept. 1979
4 mos.
device)
(Work on raceways)
Oct. 1979
Aug. 1980
10 mos.
(Work on new
Aug. 1980
Nov. 1981
15 mos.
model switch
gear)
*303 Since February 1974, Ralph has been associated with Comprehensive Designers, Inc. (hereinafter sometimes referred to as "CDI"). CDI is a provider of technical and engineering personnel. From February 1974 through February 1976, CDI assigned Ralph to work for five different clients in four different States. From March 1976 through November 1981, CDI assigned Ralph to work for General Electric Company in Burlington, Iowa (hereinafter sometimes referred to as "GE"). GE, in turn, assigned Ralph to work on several different projects during this period. Early in each calendar year, during his association with CDI, Ralph signed a new contract entitled "Employment Agreement" with CDI. [3] Each of these contracts provided that Ralph was to work at GE in Burlington, Iowa, and each provided for $10 per diem for "living expense". [4] The 1976 contract was headed "TRANSFER TO: GENERAL ELECTRIC"; there was no corresponding heading on the 1977 through 1981 contracts. The 1976 contract provided an allowance "for reporting travel costs"; the corresponding item on the 1977 through 1981 contracts was "N/A". None of the contracts specified the project Ralph would be working on for GE, *304 nor did any of the contracts indicate any termination date for either the contract, the specific GE project, or the overall relationship with GE. Since 1976 Ralph had been "laid off" from GE only for perhaps a day or two and was occasionally given "filler" work until the next project came along. With one exception, each time Ralph was terminated from one GE project he already knew that he would be coming back to work on another GE project. Ralph was paid at an hourly rate established by CDI [5], received his annual vacation time through CDI, and made his health insurance payments to CDI, regardless of the underlying client to whom he was currently *305 assigned. During the period from March 1976 through November 1981, Ralph did not return to Scottsdale, Arizona, from Burlington, Iowa, in any periodical manner. Generally, he returned during his vacation periods and between a few of the projects. Claire visited Ralph in Burlington, Iowa, from time to time. Petitioners generally filed Arizona resident State individual income tax returns (although Claire has never been employed in Arizona except for a short period of time in the 1960's) and nonresident State individual income tax returns for Iowa and other States in which Ralph worked. Their daughter was educated in the Scottsdale, Arizona Public School System; by 1979 she was no longer living with Ralph and Claire. Claire has had an Arizona driver's license since 1975 and has Arizona license plates on the car that she drives. Ralph has never had an Arizona driver's license; in 1979 he had an Iowa driver's license. Ralph was registered to vote in Arizona in November 1970 and Claire was registered to vote in *306 Arizona in July 1971. Both of their voter registrations were cancelled in November 1974 and remained cancelled until January 1980, at which time both petitioners reregistered in Arizona. Both petitioners voted in Iowa in the 1976 presidential election. Petitioners purchased a one-unit rental property as an investment in the Phoenix area in 1979. This unit is managed by the manager for the apartment complex in which the unit is located. Ralph maintained a bank account in Arizona and several bank accounts in Iowa from 1976 through 1979. Table 2 sets forth the components of petitioners' adjusted gross income as shown on their 1979 tax return. Table 2 Wages, etc. (CDI's payments to Ralph)
$45,540.80 Interest income
306.21 State and local income tax refund
895.12 Rental income
(2,113.50)
$44,628.63 Less: Employee business expenses
$8,870.90
IRA
1,499.99
10,370.89 Adjusted gross income
$34,257.74 In 1979, Ralph incurred costs for meals, lodging, and transportation expenses totalling $8,870.90 [6] *307 while in Burlington, Iowa. * * * Ralph's principal place of employment in 1979 was Burlington, Iowa. By 1979, Ralph's employment with GE through CDI had become "indefinite" rather than "temporary". In 1979, Ralph was not away from home on business when he was working in Burlington, Iowa. OPINION Petitioners maintain that a taxpayer's "tax home" is the taxpayer's residence, at least while the period away from the residence is of temporary duration. They claim that Ralph's residence was in Scottsdale, Arizona, and his stay in Burlington, Iowa, was temporary, so Ralph's "tax home" was in Scottsdale. Respondent's position is that a taxpayer's "tax home" is the taxpayer's principal place of business, unless the employment at a place away from the usual residence is temporary, rather than indefinite. He asserts that Ralph's principal place of business was at Burlington and his job there was indefinite, so Ralph's "tax home" was at Burlington. We agree with respondent. Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 (sec. 262). [7]Section 162(a)(2)[8] expressly permits a taxpayer to deduct what might otherwise be personal expenses if all *308 the following requirements are met ( Commissioner v. Flowers,326 U.S. 465, 470 (1946)): (1) The expense is a traveling expense (this includes such items as transportation fares and food and lodging expenses incurred while traveling); (2) The expense is incurred while "away from home"; and (3) The expense is an ordinary and necessary expense incurred in pursuit of a trade or business. The parties do not appear to dispute that Ralph's expenses were paid or were "traveling expenses". Because of our disposition of the "away from home" issue, we need not discuss whether the *309 expenses were "incurred in pursuit of business", an issue not addressed by the parties. This Court has held that as a general rule "home", as used in section 162(a)(2), means the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. E.g., Mitchell v. Commissioner,74 T.C. 578, 581 (1980); Daly v. Commissioner,72 T.C. 190, 195 (1979), affd. 662 F.2d 253 (CA4 1981). Since Ralph's principal place of employment during 1979 was Burlington, Iowa, under the general rule, Ralph's "tax home" was in the vicinity of Burlington. Petitioners rely on an exception to the general rule. Under this exception a taxpayer's personal residence may be the "tax home" if the principal place of business is "temporary", rather than "indefinite". See Peurifoy v. Commissioner,358 U.S. 59, 60 (1958). A place of business is a "temporary" place of business under the principles of Peurifoy if the employment is such that "termination within a short period could be foreseen". Albert v. Commissioner,13 T.C. 129, 131 (1949). See Michaels v. Commissioner,53 T.C. 269, 273 (1969). Or, viewed from the other side of the coin, an employment is for an "indefinite", *310 "substantial", or "indeterminate" period of time if "its termination cannot be foreseen within a fixed or reasonably short period of time." Stricker v. Commissioner,54 T.C. 355, 361 (1970), affd. 438 F.2d 1216 (CA6 1971). "Further, if the employment while away from home, even if temporary in its inception, becomes substantial, indefinite, or indeterminate in duration, the situs of such employment for purposes of the statute becomes the taxpayer's home." Kroll v. Commissioner,49 T.C. 557, 562 (1968). These are questions of fact ( Peurifoy v. Commissioner,358 U.S. at 60-61) as to which petitioners have the burden of proof ( Daly v. Commissioner,72 T.C. at 197). By the beginning of 1979, the year now before this Court, Ralph had been assigned, through CDI, to GE in Burlington, Iowa, for nearly three years. The contracts he signed each year do not contain any termination date for either the CDI contract or the current GE project he was working on. The record before us gives us no basis for concluding that Ralph foresaw, or could reasonably have been expected to foresee, termination of his employment in the Burlington area "within a fixed or reasonably short period" at any time *311 during 1979. Further, there is nothing in the record to negate the effect of the fact that Ralph had already worked for GE in Burlington for nearly three years. On the basis of the record in the instant case, we conclude that the Peurifoy "temporary" exception to the general "tax home" rule does not apply, and Ralph's tax home for 1979 was the vicinity of Burlington, Iowa. See McCallister v. Commissioner,70 T.C. 505 (1978); Norwood v. Commissioner,66 T.C. 467 (1976).See also Blatnick v. Commissioner,56 T.C. 1344 (1971). Petitioners argue that Ralph's employment with GE was not "indefinite", but rather was a series of "temporary" projects. We view petitioner's employment with GE as constituting one single employment rather than several distinct and separate employments. With the exception of a few brief vacations, petitioner worked continuously for the same employer without being unemployed for any appreciable length of time. "Petitioner's employment may have lacked real permanence, but the mere absence of permanence does not necessarily imply that degree of temporariness which would allow deductibility of traveling expenses." Garlock v. Commissioner,34 T.C. 611, 616 (1960). *312 Ralph testified that there was only one occasion when he did not know by the end of a given project that he would be coming back for another project. He further testified that he occasionally would perform filler work until another project would come along. He stated that for one project "the last week or so I was just twiddling my thumbs and getting paid for it." The record further reveals that while other employees were being terminated because of lack of work or funding, Ralph was continually employed by GE because of his knowledge and training and familiarity with the projects. The Court of Appeals for the Ninth Circuit (to which our decision in the instant case would ordinarily be appealable, under sec. 7482(b)(1)(A)) approaches the issue of where a taxpayer's "tax home" is located somewhat differently, but we conclude that it would reach the same result in the instant case. In Coombs v. Commissioner,608 F.2d 1269 (CA9 1979), affg. in part, and revg. in part, 67 T.C. 426 (1976), the Court of Appeals took the opportunity to review its precedents on this issue. The Court of Appeals there stated its position that, "in general, as between various possible 'abodes,' the abode or *313 at least the locale of the abode which is located in the vicinity of the taxpayer's principal place of business or employment, or as close thereto as possible, will be considered the taxpayer's tax home for purposes of the travel expense deduction of section 162(a)(2)." 608 F.2d at 1275. In Wills v. Commissioner,411 F.2d 537 (CA9 1969), affg. 48 T.C. 308 (1967), a professional baseball player maintained his family home in Spokane, Washington, while employed by the Los Angeles Dodgers. The Court of Appeals noted that Wills had spent only 138 days in Spokane during the first of the years there involved and only 96 days in Spokane during the other year. Despite the fact that Wills earned some portion of his income in Spokane, the Court of Appeals affirmed our holding that Spokane was not Wills' "tax home". 411 F.2d at 539-541. In the instant case, for the 34 months prior to 1979 and during 1979, Ralph had no employer other than CDI and his services were performed entirely on GE projects. (See table 1, supra.) During this period, Ralph returned to Arizona only from time to time. In 1979 Ralph earned almost all of his gross income in Burlington, Iowa. (See table 2, supra.) See Mitchell v. Commissioner,74 T.C. at 582-583. *314 We conclude that Ralph's principal place of business or employment during 1979 was Burlington, Iowa. Ralph's abode in Burlington was his "tax home" under the general rule established by this Court and the general rule established by the Ninth Circuit in Wills and Coombs.
As noted, an exception to the general rule that a taxpayer's "tax home" is the vicinity of his principal place of business or employment exists where a taxpayer accepts employment away from his tax home that is temporary as distinguished from indefinite. Peurifoy v. Commissioner,358 U.S. at 60. The Court of Appeals for the Ninth Circuit has also established its own approach to the Peurifoy "temporary" exception. In Harvey v. Commissioner,283 F.2d 491 (CA9 1960), revg. 32 T.C. 1368 (1959), the Court of Appeals set forth its rule as follows: An employee might be said to change his tax home if there is a reasonable probability known to him that he may be employed for a long period of time at his new station. What constitutes "a long period of time" varies with circumstances surrounding each case. If such be the case, it is reasonable to expect him to move his permanent abode to his new station, and thus avoid the *315 double burden that the Congress intended to mitigate. * * * [283 F.2d at 495; emphasis in original] In Wills, the Court of Appeals summarized the foregoing Harvey rule; it then set forth its analysis of the facts in Wills as follows: "At the beginning of the period here in question, Wills had completed three successful seasons with the Dodgers and could reasonably expect this employment to continue, as it in fact did for a total period of seven years". [9] *316 411 F.2d at 541. The Wills court distinguished Harvey as a holding "that the particular taxpayer had not changed his tax home where employment at the new station normally lasted only a few months". Ibid. See Doyle v. Commissioner,354 F.2d 480 (CA9 1966), affg. a Memorandum Opinion of this Court [10] in which the Court of Appeals indicated that a 28-month period was sufficient to satisfy the Harvey "long period of time" test (354 F.2d at 482) and suggested that nine months might be an appropriate dividing line (354 F.2d at 483 n.3). See Stricker v. Commissioner,54 T.C. at 362. See also Marth v. Commissioner,342 F.2d 417 (CA9 1965), affg. a Memorandum Opinion of this Court. [11]
We conclude that under either the temporary-indefinite test of this Court or under the Harvey test of the Ninth Circuit, Ralph was not "away from home" while employed in Burlington. As noted, this Court has determined that a taxpayer's place of business is temporary, and thus not his "tax home", only if his employment is such that termination within a short or fixed period could be foreseen. Further, employment that was temporary at its inception can become indefinite or indeterminate, thereby causing a shift in the taxpayer's "tax home". By contrast, the Harvey test of the Ninth Circuit states that an employee's tax home might shift if there is a reasonable probability known to him that he may be employed at his new station for a long period of time. In the instant case, by the beginning of 1979, Ralph had worked continuously in Burlington, Iowa, for GE for three years. There was nothing in his employment contracts with CDI to indicate that his association with GE was for only temporary projects. Indeed, although the 1976 contract stated that *317 it involved a "TRANSFER TO: GENERAL ELECTRIC", and provided an allowance "for reporting travel costs", each of the subsequent annual contracts, through the one dated January 28, 1981, seemed to treat Ralph as a continuing employee doing work for GE in Burlington, Iowa. By 1979, what had begun, arguably, as temporary employment had blossomed into indefinite employment. By this time Ralph must have known that GE valued his services and was willing to have him continue in its employ. Norwood v. Commissioner,66 T.C. at 470. Since March 1976 Ralph had been "laid off" from GE only for perhaps a day or two and was occasionally given "filler" work until the next project came along. Although each individual project might not have been forecast to last a long period of time (but see Doyle v. Commissioner,354 F.2d at 483 n.3, suggesting a nine-month rule), by the beginning of 1979 Ralph must have understood that the end of one project ordinarily meant the start of another project. For other cases involving a series of jobs at one site for one employer, see Norwood v. Commissioner,supra;Blatnick v. Commissioner,supra;Garlock v. Commissioner,supra.
We conclude that by 1979 it was reasonable *318 to expect Ralph to move his permanent abode to Burlington in order to mitigate the expense of maintaining two abodes. Harvey v. Commissioner,283 F.2d at 491. His decision to retain his personal residence in Scottsdale, Arizona, while employed in Burlington, Iowa, was a personal decision, based certainly in part on Claire's aggravated allergy condition. We have no basis for criticizing petitioners' decision as to where they should live and where Ralph should work. This decision was affected by both business and nonbusiness considerations. Under the law, however, the business considerations are not sufficiently overwhelming to allow us to uphold petitioners' claimed deductions. [12] *319 A second issue, initially raised by petitioners on brief, concerns petitioners' contention that the burden of proof on this issue has been shifted to respondent and that respondent has not carried this shifted burden of proof. We do not agree. In proceedings in this Court, petitioners have the burden of proving all matters in controversy, except where the burden of proof is specifically placed on respondent. Rule 142(a). [13] The burden of proof typically has two elements--the burden of coming forward with evidence and the burden of persuading the fact-finder. Abilene Sheet Metal, Inc. v. N.L.R.B.,619 F.2d 332, 339 (CA5 1980); E. Cleary, McCormick's Handbook of the Law on Evidence § 336 (3d ed. 1984). Respondent's determination, as set forth in the notice of deficiency, has the presumption of correctness and petitioners have the burden of proving otherwise. Welch v. Helvering,290 U.S. 111 (1933). Petitioners argue that the only burden placed on them by Rule 142 is that of coming forward *320 with evidence. Respondent, too, has come forward with evidence (by way of stipulations, stipulated exhibits, and cross examination of petitioners' witnesses), even though respondent did not call any witnesses. Petitioners continue to labor under the burden of persuasion, which requires more than merely coming forward with evidence. In any event, this case is decided on the basis of the weight of the evidence in the record, and not on the basis of the burden of proof. We hold for respondent on the one disputed issue. In order to take account of respondent's concessions, Decision will be entered under Rule 155.
Footnotes
1. As a result of one of respondent's concessions, the medical expense deduction is derivative and depends on our resolution of the issue in dispute. 2. Unless indicated otherwise, all chapter and section references are to chapters and sections of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
*. Overlap period.↩
3. Employment Agreements that are a part of the record were signed on February 24, 1976; March 26, 1977; February 17, 1978; February 9, 1979; January 31, 1980; and January 28, 1981. ↩
4. The record in the instant case does not indicate whether Ralph ever, in fact, received this allowance or, if received, how it was accounted for in petitioners' gross income or in respondent's disallowance of petitioners' employee business expense deductions. As a result, we do not decide whether respondent's disallowance should be modified because of this $10 per diem.↩
5. $8.25 per hour in the 1976 contract, $9.50 per hour in the 1977 and 1978 contracts, $12.25 per hour in the 1979 and 1980 contracts, and $13.95 per hour in the 1981 contract.↩
6. $3,236.71 was for auto lease and expenses; $5,584.19 was for meals and lodging; and $50.00 was for miscellaneous business expenses and supplies. See note 4, supra, regarding possible reimbursements by CDI.
7. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
8. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
9. In the instant case, Ralph's employment with GE in Burlington, Iowa, continued from March 1976 to November 1981 for a total period of nearly six years. 10. T.C. Memo. 1964-110↩. 11. T.C. Memo. 1964-116↩.
12. On brief, petitioner relies heavily on three Memorandum Opinions of this Court: Noneman v. Commissioner,T.C. Memo. 1980-109; McPhayden v. Commissioner,T.C. Memo. 1979-126; and Madelung v. Commissioner,T.C. Memo. 1978-418. These cases can be distinguished factually from the instant case. The employees in these cases were involved in employment that was either inherently transient (i.e., a "tool issuer" in McPhayden and a consultant in Noneman) or, in general, had more objective evidence to indicate that their employment was intended to be temporary. E.g., in Madelung,↩ the taxpayer terminated his employment in Hartford after two years, when a job became available closer to where his family lived.
13. Unless indicated otherwise, all rule references are to the Tax Court Rules of Practice & Procedure.↩